In the Matter of BERNICE HALPERN, as Executrix of HENRY HALPERN, Deceased, Appellant. LILA L. LERNER, as Guardian of SANDRA J. LERNER, Also Known as SANDRA J. SIEGEL, Respondent.

Submitted April 5, 1951; decided July 11, 1951.

*Sigmund Moses* for appellant. I. The bank deposits in the form of so-called Totten trusts are illusory transfers in fraud of the widow's rights and as such are entirely void and are part of decedent's estate. (*Newman* v. *Dore,* 275 N. Y. 371; *Krause* v. *Krause,* 171 Misc. 355, 285 N. Y. 27; *Debold* v. *Kinscher,* 268 App. Div. 786, 294 N. Y. 668; *Burns* v. *Turnbull,* 266 App. Div. 779, 294 N. Y. 889.) II. The Appellate Division was in error in sustaining the Totten trusts as to remainder after payment of the widow's statutory share. (*Burns* v. *Turnbull,* 294 N. Y. 889; *Matter of Totten,* 179 N. Y. 112.) III. The principles of *Matter of Totten* (179 N. Y. 112) are not applicable herein, since decedent did not die intestate. Therefore, a presumption of irrevocability at time of death could not arise. (*Morris* v. *Sheehan,* 234 N. Y. 366.) IV. The tentative trusts created by the savings bank deposits never became absolute or irrevocable. They continued to be the property of decedent and title thereto and control thereof at all times remained in decedent. The presumption that the alleged tentative trusts became absolute and irrevocable at his death was overcome by his acts and conduct, which clearly constituted disaffirmance of and revocation of said tentative trusts. (*Morris* v. *Sheehan,* 234 N. Y. 366; *Walsh* v. *Emigrant Ind. Sav. Bank,* 176 N. Y. S. 418, 192 App. Div. 908, 233 N. Y. 512.)

*Herbert Williams* and *Sydney P. Rappaport* for respondent. I. The savings bank accounts are valid and bona fide trusts. (*Harrington* v. *Harrington,* 290 N. Y. 126.) II. Totten trusts

are not invalid testamentary dispositions. (*Matter of Totten,* 179 N. Y. 112; *Matter of Ellis,* 178 Misc. 491.)  III. The petition fails to put in issue section 18 of the Decedent Estate Law or the widow's rights thereunder.  The widow failed to elect to take against the terms of the will.  Petitioner, therefore, cannot now rely on or invoke section 18 of the Decedent Estate Law. (*Matter of Paskievitz,* 184 Misc. 320; *Matter of Zweig,* 145 Misc. 839; *Matter of Hearn,* 158 Misc. 370; *Matter of Wurmbrand,* 194 Misc. 203; *Matter of Vicedomini,* 195 Misc. 1057.)  IV. In no event is the widow entitled to more than one third of decedent's estate, that being her intestate share under section 18 of the Decedent Estate Law.  (*Krause* v. *Krause,* 285 N. Y. 27; *Matter of Zweig,* 145 Misc. 839; *Matter of Topazio,* 175 Misc. 132.) V. Petitioner cannot rely on section 18 and also take under the will.  (*Matter of Cunningham,* 20 A. 714 [Pa.]; *Matter of Byrnes,* 149 Misc. 449; *Matter of Curley,* 160 Misc. 844.)

DESMOND, J.  Appellant-executrix seeks by this discovery proceeding to bring into the estate of her deceased husband, of whose will she is the sole beneficiary, four savings bank accounts. Each of those accounts was opened by the husband (decedent), fifteen months before his death, in his own name in trust for respondent, his infant grandchild, that is, as " Totten trusts ". The balances in those four accounts, when he died, totaled about $14,000.  His gross estate (other than those bank accounts) was of the value of about $3,300.

Petitioner's theory is that " the aforesaid purported trust accounts are illusory in that decedent retained full and complete control and exercised full dominion over said accounts at all times ", and that they are, therefore, assets of the estate. Respondent's submission is that the bank accounts, as bona fide Totten trusts, became respondent's absolute property, at decedent's death.

The will, naming petitioner wife as executrix and sole beneficiary, was executed in 1939.  In 1946, at about the time decedent and appellant ceased living together, these four accounts were opened by decedent in four savings banks.  Decedent afterwards made several deposits in one of the accounts and one deposit in another, but made no withdrawals from any of them, and never in any way disaffirmed or revoked any of the trusts.  There is

testimony that decedent several times told people that he wanted his granddaughter Sandra (respondent) to have his bankbooks. Before his death he turned over one book to Sandra's mother. The other three books were in his safe-deposit box when he died.

The Surrogate held that the transfers were all illusory, and that the estate owned the entire proceeds thereof. In so ruling, the Surrogate did not find that there was in fact anything unreal or fictitious about the setting up of these deposits, or that decedent had any intent except that his granddaughter should have them at his death. The Surrogate's opinion was, in essence, this: that under *Krause* v. *Krause* (285 N. Y. 27), and *Burns v. Turnbull* (294 N. Y. 889), a trust by a husband, made for the the purpose of defeating his wife's expectant interest in his property, is illusory and void.

The Appellate Division modified the Surrogate's order by directing that there should be paid into the estate not the whole balance of the accounts, but so much only as should be necessary to give the widow her share, as in intestacy (Decedent Estate Law, §§ 18, 83), of the whole property left by her husband, including the bank balances. The Appellate Division, like the Surrogate, concluded that these transfers were illusory, but it is clear again that the appellate court, like the trial court, found them illusory, not on any proof that they lacked actuality or reality, but solely because they were made for the purpose of keeping the widow from collecting that share of her husband's property allotted to her (under certain circumstances) by the two above-quoted sections of the Decedent Estate Law.

We hold that respondent's legal position is correct, and that these Totten trusts were, on this record, valid, effective and not illusory. It is, perhaps, regrettable that any husband resorts to such transfers to keep his money from his wife. But Totten trusts, if real and not merely colorable or pretended, are valid transfers with legally fixed effects. Section 18, as this court pointed out in *Newman* v. *Dore* (275 N. Y. 371, 379), citing *Leonard* v. *Leonard* (181 Mass. 458), gives to a wife, not an absolute right which attaches to all her husband's property as soon as he acquires it, but " only an expectant interest in the property of her husband which becomes part of his estate " (see, to the same effect, Judge Crane's statement in *Herrmann* v. *Jorg-*

*enson,* 263 N. Y. 348, 356). That *Newman* decision said (and we repeated the same language in *Krause* v. *Krause, supra,* p. 31) that " the only sound test of the validity of a challenged transfer " is " whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer." In *Krause* v. *Krause,* applying that test, we concluded that, on the unusual facts there established, the weight of evidence favored the holding of the trial court that decedent Krause had never intended that his Totten trust, made in favor of his daughter who lived in a foreign country and from whom he had not heard in years, should have any real effect, or that the money should ever go to the faraway daughter. But there is no evidence in the present record which would justify any such finding. All the proof here is that decedent wanted his granddaughter to have the bank balances, and that he put, and left, the money in the banks so she would get it. Censurable though his motive may have been, he was doing what the law allowed. Unworthiness of motive could not make illusory an otherwise complete transfer. It is true that in all three of the cases cited by the Appellate Division (*Newman* v. *Dore, Krause* v. *Krause* and *Burns* v. *Turnbull,* all *supra*) the attempted trusts (a Totten trust in the *Krause* case, *inter vivos* trusts in the others) were held illusory. But in each of those cases the finding of illusoriness was made on a factual showing of unreality, and not solely because the transfers operated to, and were intended to, defeat the widow's expectancy.

There is nothing illusory about a Totten trust as such. We take notice that great numbers of them exist, many in favor of young children. Their legal effect was pronounced long ago (1904) in *Matter of Totten* (179 N. Y. 112, 126), as follows: " In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." That rule must be applied here, in the absence of any proof that these transfers were " intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed " (*Newman* v. *Dore,* 275 N. Y. 371, 381, *supra*). Since there was no such evidence here, these Totten trusts were like all other

Totten trusts, and, when the depositor died, they were completely effective (1 Scott on Trusts, § 58.3, p. 360), and had the automatic and immediate consequence of putting absolute ownership in the infant beneficiary. Perhaps it may seem that we are putting the legislative policy of section 18 to rout by use of the court made (but legislatively recognized, see Banking Law, § 239, subd. 2) rule of the *Totten* case. But the Legislature has made no effort to interfere with the impact of Totten trusts in this connection, nor has the Legislature, despite the test announced in 1937 in *Newman* v. *Dore,* done anything to save a wife from disinheritance by means of an effective trust erected in a husband's lifetime, for that purpose. It is the simple fact that section 18 does not affect the disposition of property *inter vivos* (*Newman* v. *Dore,* p. 378).

Applicable here is the language and thought of *Inda* v. *Inda* (288 N. Y. 315), as to the effect of a joint savings bank account, as against a claim of illusoriness. This court noted, in the *Inda* opinion (p. 317), that the Banking Law preserves as to joint accounts (just as it does as to Totten trust deposits), '' the form of deposit　*　*　*　as a lawful and convenient method for the transmission of property.'' This court concluded, in the *Inda* case, that, whatever may have been the actual intent of the depositor, everything required by law for the creation of a joint tenancy had been done, and, therefore, the settled legal result followed, as of course.

Two other matters should be noticed. First, we point out that this widow, being the sole testamentary beneficiary, had no right to file, and could accomplish nothing by filing, a notice under section 18 (*supra*) of intention to '' take against the will ''. If, as executrix (see *McQuaide* v. *Perot,* 223 N. Y. 75, 79) she had been successful in getting these moneys into the estate, she would have, as beneficiary, gotten the full benefit thereof. That brings us to the second matter. The Appellate Division, reasoning further from its conclusion that these trusts were illusory because destructive of section 18 benefits, decided that only so much thereof should be set aside as was required to put the widow in the section 18 position. Strictly, the correctness of that part of the Appellate Division's order is not before us, since the infant took no appeal and there is thus no

objection, in this court, to that partial award to petitioner. However, the question is important, and if we affirmed without discussing it, we would be thought to be in agreement with the Appellate Division. We see no power in the courts to divide up such a Totten trust and call part of it illusory and the other part good. The only test is that quoted above, from *Newman* v. *Dore* (*supra*) and *Krause* v. *Krause* (*supra*), and the result of its application would necessarily be either total validity or total invalidity, as to any one transfer.

For the reasons given, the order should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

LEWIS, J. (concurring). By this discovery proceeding — instituted pursuant to section 205 of the Surrogate's Court Act — Bernice Halpern, as executrix of the will of her deceased husband, would have four bank accounts in four separate savings banks in trust for Sandra Jean Lerner declared to be the property of the decedent's estate and demands that all moneys in those accounts be delivered to her as executrix. The beneficiary of the trusts, Sandra Jean Lerner, is a granddaughter of decedent and a respondent in this proceeding.

After a trial the Surrogate of Bronx County held that the four savings bank trusts (Totten trusts*) were illusory in their entirety; that the moneys therein were the property of the estate and should be paid over to petitioner. (197 Misc. 502.) At the Appellate Division the decree of Surrogate's Court was modified on the law and facts, it being the view of that court that the trusts were illusory only to the extent that they encroached upon the share to which the widow was entitled under sections 18 and 83 of the Decedent Estate Law. (277 App. Div. 525.) The executrix appeals to this court as of right from the Appellate Division's order of modification.

On January 23, 1948, Henry Halpern died leaving a will, executed January 5, 1939, by the terms of which he named his wife, Bernice Halpern — the petitioner herein — as sole legatee and executrix. It appears, however, that in November, 1946, decedent and his wife separated and were living apart at the time of his death.

---

* *Matter of Totten* (179 N. Y. 112).

After decedent's death his executrix found in his safe-deposit box three savings bankbooks issued by Lincoln Savings Bank of Brooklyn, The Greater New York Savings Bank and Flatbush Savings Bank. The legend inscribed on each of those books shows an account of " Henry Halpern in trust for Sandra Jean Siegel ", who, as already noted, is a granddaughter of decedent. A fourth bankbook, issued by Broadway Savings Bank, was found among decedent's possessions, after his death, by his daughter Lila Libbe Lerner — mother of Sandra Jean. This book which bore the inscription " Henry Halpern " was subsequently turned over to the petitioner by Lila Libbe Lerner. When the petitioner attempted to withdraw money from that account in the Broadway Savings Bank, she was informed that, according to the bank records, the account was in the name of " Henry Halpern, in trust for Sandra Jean Siegel."

The decedent's last will and testament was admitted to probate and letters testamentary were issued on May 22, 1948, to the petitioner, the named executrix. However, the bankbooks and the four deposits totaling $13,934.51 were not included as part of the decedent's estate in the petition for probate.

It is conceded that the petitioner did not at any time file as decedent's widow a notice of election under section 18 of the Decedent Estate Law. It also appears that — as provided by the will — she has received all of decedent's estate totaling $3,290.94 not including, however, any of the funds in the four savings bank accounts.

About August 22, 1949 — one year and three months after the will was probated — the petitioner instituted this proceeding, her claim being that the four savings bank accounts are the property of the decedent's estate and that the funds therein should be turned over to her as executrix. In support of that claim the petitioner argues: (1) that the Totten trusts — constituting testamentary transfers of property — are void in violation of section 21 of the Decedent Estate Law; (2) that these particular Totten trusts were revoked by the testator's acts and conduct; and (3) that in any event these Totten trusts are illusory and must be declared void since they violate sections 18 and 83 of the Decedent Estate Law.

We find no merit in plaintiff's first argument that Totten trusts are invalid as testamentary transfers. The rule as to that type of bank account was established long ago in *Matter of Totten* (179 N. Y. 112, 125–126), where it was stated: " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or [there has been] some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.'' (And see 1 Scott on Trusts, pp. 359, 360.)

The petitioner's second argument — that the four Totten trusts were revoked by testator's acts and conduct — is also, in our view, without merit. We have seen that three of the four bankbooks were found by petitioner in decedent's safe-deposit box at the time of his death, and that thereafter the fourth bankbook was found by his daughter among his personal belongings. On this branch of the case there was testimony by the decedent's daughter that just prior to his death he had stated to her — " ' I have a few bank books for the child ' '' and '' ' * * * when I go, I want it to go to the baby, Tanda [Sandra Jean]. ' '' Upon evidence of record before us we conclude the courts below correctly ruled that during his lifetime the decedent in no way revoked or disaffirmed the four Totten trusts.

We come then to petitioner's third argument, viz., that the four Totten trusts are illusory and, therefore, under the decisions in *Newman* v. *Dore* (275 N. Y. 371), *Krause* v. *Krause* (285 N. Y. 27), and *Burns* v. *Turnbull* (294 N. Y. 889), the savings bank accounts were the property of the estate of the decedent, disposition of which should be governed by the terms of his will.

Although each of the fact-finding courts — the Surrogate and the Appellate Division — have held that the Totten trusts here involved were illusory, they disagreed as to the legal effect of

this type of an illusory transfer. Relying chiefly on the rule of *Burns* v. *Turnbull* (*supra*), the Surrogate agreed with the petitioner's contention, found the trusts to be entirely illusory and decreed that they were the property of the decedent's estate to the exclusion of the named beneficiary of each trust.

At the Appellate Division, where the Surrogate's decree was modified, the Totten trusts were held to be illusory but were set aside only to the extent that they encroached upon the widow's share in the decedent's estate as provided under sections 18 and 83 of the Decedent Estate Law. It is the position of the respondent as beneficiary of these savings bank trusts that petitioner's only right to share therein is by virtue of section 18 of the Decedent Estate Law and that, since she has failed to file an election to take against the terms of the will as the statute requires, she may not rely upon, nor may she invoke that section for the purpose of setting aside the trusts. Respondent further argues that at best the trusts should be set aside only to the extent necessary to guarantee the widow her intestate share and that they are not wholly invalid.

The legal effect of an illusory transfer which is in conflict with statutory rights to which a surviving spouse may be entitled under sections 18 and 83 of the Decedent Estate Law was considered in *Newman* v. *Dore* (275 N. Y. 371, *supra*). In that case — which did not involve a Totten trust — the court was concerned with whether a trust set up by a husband during his life could under any circumstances constitute an unlawful invasion of the expectant interest of his wife. There the decedent had left a will which created a trust of one third of his property for his wife. Just prior to his death, however, he had established an *inter vivos* trust of all his property — naming as beneficiaries persons other than his wife. Under that trust agreement the decedent as settlor had retained almost complete control of the trust property. In an action by the beneficiary to compel the trustee to carry out the terms of the trust it was held that the trust was illusory and therefore could not be used as a means of defeating the expectant interest of the wife in her husband's estate. In the opinion of this court per LEHMAN, J., it was said (p. 379): " Since the law gives the wife only an expectant interest in the property of her husband which becomes

part of his estate, and since the law does not restrict transfers of property by the husband during his life, it would seem that the only sound test of the validity of a challenged transfer is whether it is real or illusory. * * * The test has been formulated in different ways, but in most jurisdictions the test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer.'' After referring to the rule in other jurisdictions where the problem had been considered, the opinion continues (p. 380): '' In no jurisdiction has a transfer in trust been upheld where the conveyance is intended only to cover up the fact that the husband is retaining full control of the property though in form he has parted with it. Though a person may use means lawfully available to him to keep outside of the scope of a statute, a false appearance of legality, however attained, will not avail him. Reality, not appearance should determine legal rights.'' From that opinion it is apparent that the court was chiefly concerned with its ruling that by means of an illusory trust a spouse may not be deprived of statutory rights to which he or she is entitled. (Cf. *Krause* v. *Krause,* 285 N. Y. 27, *supra; Burns* v. *Turnbull,* 294 N. Y. 889, *supra.*)

The decision in none of the three cases to which reference is last made above deals with the question presented by the order of the Appellate Division, viz., whether the four Totten trusts here involved should be set aside in their entirety or only to the extent necessary to guarantee the widow her intestate share thereof under section 18 of the Decedent Estate Law. For reasons presently to be stated that question is not a factor in the determination of this appeal.

The order of the Appellate Division, as we have seen, determines that the four Totten trusts are illusory to the extent that they encroach upon the widow's share in the decedent's estate '' guaranteed under sections 18 and 83 of the Decedent Estate Law''. The four trusts are sustained by the Appellate Division order with respect to what remains after the widow shall have received under the will the equivalent of the share '' guaranteed to her by sections 18 and 83 of the Decedent Estate Law '' computed as though the balance in said accounts had been part of the decedent's estate at the time of his death. Such a disposi-

tion of the case — which would entitle the widow to take her intestate share in bank deposits comprising the four Totten trusts — manifestly has as its basis an assumed legal right in the petitioner to invoke the benefits to which she is entitled as a widow under section 18. Such an assumption disregards the fact that in that statute there is no unconditional guarantee that a surviving wife will receive her intestate share of her deceased husband's estate. Where there is a will the statute requires an election by a spouse within a prescribed time to take his or her share of the estate as in intestacy " *  *  * subject to the limitations, conditions and exceptions contained in this section." One of those conditions is that " an election *  *  * must be made within six months from the date of the issuance of letters testamentary  *  *  *." (§ 18, subd. 7.) As was stated in Beechler on Elections Against Wills at page 356: " *  *  * Section 18 controls in the event that the deceased spouse dies testate, and *the rights thereby granted are granted on condition that the surviving spouse perform the acts specified in the statute.* Thus the survivor has the right to abide by the terms of the will, whether the will contains sufficient provisions, or inadequate provisions, or no provisions at all, for such survivor. *If such survivor does not desire to abide by the terms of the will, then he or she must perfect a notice of the election, to take against the will, as provided by subdivision 7 of section 18.*" (Emphasis supplied.)

Here, concededly, the petitioner has never filed a notice of election to take against the terms of her husband's will. Accordingly she cannot take advantage of benefits afforded by section 18; nor can she avoid the legal consequences of her failure to comply with the conditions contained in that section.

Moreover, the present discovery proceeding has been instituted by the petitioner as executrix of the decedent's will, not by her individually, as widow, to enforce her rights, if any, under section 18. Whatever personal rights the petitioner, as widow, may have in the estate of her husband, may not be enforced in a proceeding, such as the one before us, brought by her as executrix. " It has been repeatedly held that persons suing or being sued in their official or representative capacity are, in contemplation of law, distinct persons, and strangers to

any right or liability as an individual  *  *  *.'' (*Leonard* v. *Pierce,* 182 N. Y. 431, 432; *Collins* v. *Hydorn,* 135 N. Y. 320, 324; *Boyd* v. *United States Mtge. & Trust Co.,* 187 N. Y. 262, 272; and see *Matter of Sullivan,* 264 App. Div. 65, 68.)

Despite the foregoing considerations, which are set forth to indicate wherein we are not in agreement with the rationale of the Appellate Division order, we are constrained to affirm that order by reason of the fact that no appeal therefrom was taken in behalf of the infant beneficiary of the Totten trusts. (See *Ginsberg* v. *City of Long Beach,* 286 N. Y. 400, 403).

The order should be affirmed, with costs to all parties payable out of the estate.

LOUGHRAN, Ch. J., DYE and FULD, JJ., concur with DESMOND, J.; LEWIS, J., concurs in result in separate opinion in which CONWAY and FROESSEL, JJ., concur.

Order affirmed.