In the Matter of the Accounting of CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Surviving Trustee under a Trust Agreement Made by JOSEPH N. FORD, and as Administrator of the Estate of JOSEPH N. FORD, Deceased Trustee, Respondent. ANNIE W. HARSHBARGER et al., Appellants; MARIE G. FORD, Respondent.

First Department, November 13, 1951.

*Thomas J. Minturn* of counsel (*Richard T. Guerin* with him on the brief; *McQuistion, Minturn & Kelly,* attorneys), for Annie W. Harshbarger, Harry W. Ford, Clara L. Kaiser and Margaret Davis Gray, appellants.

*William T. Collins II,* for Fannie M. Ford, appellant.

*David R. Crow* of counsel (*Charles F. Hopkins* with him on the brief; *Tanner, Sillcocks & Friend,* attorneys), for respondents.

Cohn, J. This is a proceeding under article 79 of the Civil Practice Act instituted by the Chase National Bank of the City of New York, as surviving trustee and as administrator, to render its final account of proceedings under an *inter vivos* trust agreement dated August 2, 1946, executed by one Joseph N. Ford, deceased, and an amendment thereto dated September 25, 1946.

An answer interposed on behalf of the five appellants attacks the validity of the trust agreement and amendment upon various grounds. It is alleged that the documents were not signed by Joseph N. Ford; that he was incompetent to create the trust; that the execution of the trust agreement and amendment thereto were brought about by fraud and undue influence; that both instruments are invalid and that Joseph N. Ford, therefore, died intestate.

Objections to the account were heard by a Referee, who, after protracted hearings, reported to the Special Term that the original agreement and the amendment thereto were the free and voluntary acts of the deceased; that he was of sound mind when he executed the instruments; that the signature affixed to the instruments was that of the deceased; that the agreements were valid in all respects; and that there was no duress, undue influence or fraud practiced by his wife to procure the amendment to the original agreement.

The Special Term entered an order confirming the report of the Referee and judicially settling the accounts of the Chase Bank as surviving trustee and administrator of the estate of Joseph N. Ford, deceased. From that final order this appeal has been taken.

Joseph N. Ford, the settlor herein, was married to Marie Ford in June, 1927. Apparently they lived happily together until Ford's death some twenty years later. The deceased left no will. There were no children. Ford had a brother and four sisters, all of whom are still living, and who are the appellants.

On July 11, 1946, the settlor suffered a stroke, which caused him to become bedridden. At that time he was seventy-two years of age. He was a man of keen intelligence and he had been very successful in business. From the day he was stricken until April 2, 1947, the date of his death, he was under the constant care of his wife. No one of his four sisters had seen him during his illness; his brother Harry Ford saw him only on one occasion on a visit to New York. The sisters all resided in other States of the Union.

On August 2, 1946, in the presence of a representative of the Chase Bank and before a notary public, Ford executed a revocable trust agreement of virtually all his property, consisting of negotiable stocks, bonds and cash, worth between $500,000 and $600,000. He named himself and the Chase Bank as cotrustees. The securities and stocks were thereupon turned over to the Chase Bank.

The agreement provided that Ford was to receive the income of the principal of the fund for life, and upon his death, one third of the principal was to be paid to his wife, and the remainder was to go to his brother and sisters in equal shares.

Less than two months later, and on September 25, 1946, Ford executed an amendment to the trust agreement, again in the presence of a representative of the Chase Bank and a notary public. This amendment was directed only to the distribution of the principal upon the settlor's death. It stipulated that Ford's brother and sisters were each to receive only $2,000, if they survived him, and that the remainder of the principal of the trust fund was to go to Mrs. Ford.

Great stress has been placed upon the fact that the amendment of September 25th, gave practically the entire remainder of the trust fund to the wife in the event of her husband's prior death, while the agreement as originally executed gave her only one third. It is argued that the wife used undue persuasion, improper influence and coercion upon her husband to effect this change. It is to be anticipated that a wife will, under ordinary circumstances, affect the judgment and thinking of her spouse. Indeed it would be strange if a faithful wife of twenty years did not exert some influence over her husband's thought and action with respect to the disposition of his property. That such influence was in this case undue or improper is, however, entirely speculative and wholly groundless.

A review of the evidence satisfies us of the correctness of the findings of the court to the effect that the agreement and the amendment thereto were the free and independent acts of Joseph N. Ford; that the deceased was not mentally incompetent when he executed them; and that they were not induced by fraud, duress or undue influence.

Appellants also argue upon this appeal that the agreement of August 2, 1946, and its later amendment creating a trust during the lifetime of the deceased were invalid and illusory, and that the deceased was merely attempting a testamentary disposition of his property; that inasmuch as the instruments were not executed with all the formalities required of a will,

they were invalid for all purposes, and therefore, Ford died intestate as to the assets for which the Chase Bank is accounting. It is argued that under the provisions of the trust, Ford exercised complete control over the investments until his death; that since he had the power of revocation and was the sole life beneficiary there was no valid trust *inter vivos* created, but that there was an attempted testamentary disposition of his property. We think that this contention is untenable.

The trust fund, established primarily to effect efficient management of the estate during the decedent's illness, would be invalid and illusory only if the settlor had such control over the corpus as to make the cotrustee bank a mere agent so as to permit the settlor to do as he pleased with the property of the trust. (1 Scott on Trusts, § 57.6, pp. 353–354.) The principle involved is clearly stated in the Restatement of the Law of Trusts in subdivisions (1) and (2) of section 57, as follows:

'' (1) Where by the terms of the trust an interest passes to the beneficiary during the life of the settlor, the trust is not testamentary merely because the settlor reserves a beneficial life estate or because he reserves in addition a power to revoke the trust in whole or in part and a power to modify the trust.

'' (2) Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.''

The proof shows that the decedent exercised no more and no less power than his cotrustee, each sharing equally the proper administration of the trust during the lifetime of the settlor. Ford exercised only the control of a cotrustee, as established by the numerous approvals and disapprovals of the recommendations made by the bank, and as shown by the consultations he requested and received with representatives of the Chase Bank concerning taxes and investments. To say that Ford was the sole trustee and sole beneficiary, and that he had complete control of the fund, is to fly in the face of the provisions of the trust agreement and to ignore what was done by both cotrustees in the administration of the trust. The fact that the Chase Bank did not make investment changes in the principal unless they were approved by Ford, the cotrustee, does not mean that Ford had exclusive control of the assets. In seeking the approval of

the individual cotrustee on investments or changes to be made in them, the Chase Bank was merely following a recognized practice employed by banks when a bank acts as a cotrustee with an individual.

Moreover, the property which was the subject of the trust was clearly designated and identified so as to enable title to pass to the cotrustees. Actual delivery of the fund to the trustees was effected with the intention of passing legal title. Thus, the intention in good faith to transfer a present interest was clear. (*McCarthy* v. *Pieret,* 281 N. Y. 407.) The trust created was not colorable or illusory — it was a real, present and actual transfer of ownership of all of the settlor's property to the trustees, and was valid in all respects. (*Matter of Halpern,* 303 N. Y. 33, 37; *Newman* v. *Dore,* 275 N. Y. 371, 379; *Hart* v. *Hart,* 194 Misc. 162, 164, affd. 274 App. Div. 1036; *City Bank Farmers Trust Co.* v. *Charity Organization Soc.,* 238 App. Div. 720, affd. 264 N. Y. 441.)

In the cases of *Newman* v. *Dore* (*supra*) and *Burns* v. *Turnbull* (266 App. Div. 779, affd. 294 N. Y. 889) upon which appellants seem to rely, the court was chiefly concerned with its ruling that by means of the creation of an illusory trust a spouse should not thus be deprived of a statutory right to which he or she was entitled.

In *Newman* v. *Dore* (*supra*) the decedent had left a will which created a trust of one third of his property for his wife. Before his death, however, he established an *inter vivos* trust of all his property excluding his wife as one of the beneficiaries. Under the trust agreement the decedent, as settlor, had retained almost complete control of the trust property. The trust was held illusory, and it was decided that it could not be used as a means of defeating the expectant interest of the wife in her husband's estate.

In *Burns* v. *Turnbull* (*supra*) a wife, eleven weeks before she committed suicide, created an *inter vivos* trust of her entire estate, which completely excluded the husband, with whom she was living, from any participation therein. The trust was held to be illusory because the settlor retained complete control over the property during her lifetime, and established the trust solely to cancel the expectant interest of the husband in the wife's estate under sections 18 and 83 of the Decedent Estate Law.

In the present case there is no factual showing of unreality, nor can it be said that there was an intention of defeating the expectant interest of anyone. Here the trust agreement, as originally executed, gave to the widow, if she survived her husband, less than she would have been entitled to receive if

Ford had died intestate. The amendment executed the next month gave her much more than she would have received had he died without leaving a will. The trust agreements were properly executed. The amendment favored the wife, who had lived with him for two decades. There was no attempt made by the settlor to deprive his brother and sisters, of any part of his estate, for no one of them was entitled by statute to any portion of it if the settlor had chosen to leave a will giving his property to others, or if he had decided to create an *inter vivos* trust leaving the remainder to persons other than appellants.

The evidence fully sustains the validity of the agreement of August 2, 1946, and the amendment of September 25, 1946.

The order should be affirmed, with costs.

VAN VOORHIS, J. (dissenting). The record shows that no will of the late Joseph N. Ford was in existence during the twenty years of his married life with respondent prior to his death on April 2, 1947. He had no children. It affirmatively appears that he understood the New York law of intestacy, under which his wife would have received $10,000 and one half of his estate had he died at any time prior to the cerebral hemorrhage which he sustained on July 11, 1946. He left a brother and four sisters, besides his widow. One of these sisters, Fannie, had kept house for him before his marriage, and he remained on good terms with them all.

After his stroke and on August 2, 1946, he executed what purports to have been a trust agreement covering almost all of his property, under which he and the Chase National Bank of the City of New York were named cotrustees. The income was reserved to Mr. Ford for life, one third of the remainder upon his death was directed to be paid to his wife, respondent Marie Ford, and two thirds to his brother and sisters. On September 25, 1946, he executed another instrument purporting to amend this trust so that upon his death his brother and sisters would each receive $2,000, and his wife would have the rest (about $590,000). In giving to her a remainder of one third under the August 2d instrument, he provided less than her intestate share would have been, whereas by the instrument of September 25th he gave to her practically his entire estate.

The testimony indicates that after his stroke he became confined to bed as a helpless cripple, was physically weak and often emotionally overwrought, and that by his request his wife alone took care of him. Their married life continued to be harmonious as it had been. He was not mentally incompetent, and there is no evidence that she exerted undue influence over him resulting

in the September 25th amendment of the trust. The circumstance that this instrument made a much more favorable provision for her than he had seen fit to do during the previous nineteen years of his marriage could not prevent a change in his testamentary intention in his wife's favor, and is not enough to subject her to a charge of undue influence. There is no disagreement among the members of the court in this respect.

The point of difference is that it seems to me that the disposal of these assets by this trust instrument, as amended, was in the nature of a testamentary disposition which could only be accomplished by will. It was not really a trust. The criteria ordinarily adopted in such cases are whether the settlor retained the income from the trust assets for his beneficial use, and whether he retained power to revoke and amend the instrument, as well as power to direct the administration of the trust. If these powers are retained, then, although the instrument in form is one of trust, the effect is really to create the relationship of principal and agent (*Matter of Fitzpatrick,* 17 N. Y. S. 2d 280; *Burns* v. *Turnbull,* 266 App. Div. 779, affd. 294 N. Y. 889; Restatement, Trusts, § 57, comment g, p. 179; *Newman* v. *Dore,* 275 N. Y. 371). This arrangement made by Mr. Ford includes all of these features, with the possible exception of retaining power to direct the administration of the trust. Settlor named himself as cotrustee so that no action could be taken by the corporate trustee without his concurrence. That circumstance alone would be insufficient to retain control in the settlor, but it did give him control in combination with his reserved power to amend or revoke the trust. If he disagreed with any of the proposals of the Chase National Bank to buy or sell securities, or if it declined to accede to any of his proposals, all that he needed to do was to revoke or amend the trust. Under these circumstances, he was assured of having his own way in the administration of the trust, and that is what occurred wherever there was a difference of opinion, as there was, for example, concerning his desire to keep 80% of the assets invested in common stocks. At page 40 of respondent's brief the following statement is made: "Where the settlor of a revocable trust is the sole beneficiary and has reserved to himself the right to alter, amend or revoke, it is almost a uniform practice for a corporate co-trustee, not only to conform to the necessity of consulting its individual settlor-co-trustee as to investments, etc., but on any difference of opinion between them to abide by the settlor's judgment, providing it is within the realm of prudence."

These conclusions are strengthened in this case by the con-versation about the preparation of the trust agreement between Mr. Ford and a Mr. Hicks, a representative of the trust depart-ment of the Chase National Bank, who called upon him at his home at his request. Ford preferred not to talk to any lawyer, and had these papers prepared by Hicks, who con-sulted an attorney of Mr. Ford's selection for that purpose.

Hicks testified that when he first arrived at Ford's home, at Ford's request, he was under the impression that he wished to discuss a will: "I asked him about his will and he said it was not really what he wanted to discuss. He wanted to discuss the management of his assets. He spoke of his physical condition." Mr. Ford then referred to the bank's investment service, which is purely an advisory service, but that did not entirely fulfill his requirements. Mr. Ford could not get out of bed to go to brokerage offices to call for and deliver stock certificates or to attend to the other details of stock transactions; therefore, more than advisory services were necessary. There is no doubt that Ford considered himself to be equal to deciding how his property should be invested, as he always had done, although he did not know for how long he might remain so. He told Hicks that he intended to direct the investment of the trust funds. The object was to lift the burden from his shoulders of attending to the administrative details, but leaving the deci-sions to him for so long as he remained competent. He asked Hicks "what would happen if he was unable to make a decision or if he was unwell. Then he asked me about a trust. He said he wanted a trust that he could direct and then have the bank take over." The function of the bank was intended to be that of agent, not trustee, and that is what it was.

Under the court decisions above cited and under the cir-cumstances of this case, the gifts of the remainder at his death were testamentary in character, and to be valid these instru-ments had to be executed in the manner provided by statute for the execution of wills. "It has been the object of the statutes of the various states prescribing the mode in which wills must be executed, to throw such safeguards around those transactions as will prevent fraud and imposition, and it is wiser to construe these statutes closely, rather than loosely, and so open a door for the perpetration of the mischiefs which the statutes were designed to prevent." (*Matter of Booth,* 127 N. Y. 109, 116.) No grave injustice would be likely to result from such a determination. The effect of allowing the principal of the trust to pass as part of his estate in intestacy,

would be to dispose of it in the same manner which he had deliberately selected and continued in force during all but the last eight months of his married life.

The final order appealed from should be modified so as to determine that the *inter vivos* trust agreement dated August 2, 1946, and the amendment thereto dated September 25, 1946, are invalid as instruments of trust, and that decedent Joseph N. Ford died intestate seized of the assets of said trust as part of his estate.

GLENNON, J. P., CALLAHAN and SHIENTAG, JJ., concur with COHN, J.; VAN VOORHIS, J., dissents and votes to modify, in opinion.

Order affirmed, with $20 costs and disbursements to respondents.