John F. Scileppi, J.
Plaintiffs in this consolidated action are Max Kaufman, surviving spouse of Rose Kaufman, and Naomi Zadan and Herbert Volin, children of Rose Kaufman by a former marriage. The defendant is also a child of Rose Kaufman by her former marriage.
The complaint in the action contains two causes of action: (1) on behalf of Max Kaufman alone to set aside a conveyance of a two-family house located in this county on the ground that its transfer from his deceased wife to the defendant, for a stated nominal consideration of $10, was illusory; and (2) on behalf of all the plaintiffs to set aside that transfer on the *330 ground that undue influence was allegedly exercised by the defendant over her mother. This cause of action was discontinued by the plaintiff Max Kanfman at the trial and dismissed by the court as to the remaining plaintiffs. In the summary proceeding which was consolidated with the action pending in this court defendant Bette Zash, seeks to recover possession of so much of the premises in question as are still occupied by plaintiff Max Kaufman.
Bose Kaufman (formerly Bose Volin) took title to the property involved under a deed dated December 2, 1932, at a time when she was married to one Harry Volin. In February, 1947, she personally paid for and discharged a mortgage on that property, amounting to $4,170.71, at which time the property became free and clear of all incumbrances. On December 20, 1947, her husband, Harry Volin, having since died, the decedent married the plaintiff Max Kaufman, who thereupon moved into the apartment in the subject premises then occupied by her.
By deed dated July 14, 1950, and recorded on July 18, 1950, the decedent, Bose Kaufman, conveyed title to the property in question to herself and the defendant as joint tenants. This deed was drawn by an attorney who at the time of its execution explained to the defendant and the decedent the right of survivorship thereunder. The decedent died on July 29, 1957, and her will was admitted to probate in Queens County on January 12, 1958.
The Decedent Estate Law does not inhibit the inter vivos transfer of property by either spouse. One may sell it, give it away or subject it to valid liens or charges, provided, of course, that the transfer or conveyance is real and that the transferor has divested himself of the title of the property without right of revocation. This is so even wliere the grantor is motivated by an intent to deprive the surviving spouse of his or her rights. (Newman v. Dore, 275 N. Y. 371; Krause v. Krause, 285 N. Y. 27; Inda v. Inda, 288 N. Y. 315; Matter of Wrone, 177 Misc. 541.)
The test of the validity of an inter vivos transfer of property as respects the rights of a surviving spouse is not the decedent’s motive or intent but whether the transfer was real or illusory. (Newman v. Dore, supra.) The question in each ease is frequently a very narrow factual issue. This is true in the case at bar.
Here the proof of the plaintiff Kaufman, in substance, is that his deceased wife continued her supervision and control of the property after its conveyance in that the property remained listed in her sole name with State and city depart *331 ments and with the Veterans Bureau, the fire and public liability insurance was continued in her own name as the sole assured, and in her application for her widow’s tax exemption, predicated on the military service of her former husband, she certified herself as the owner of the premises and the defendant attested to this representation on the forms filed by her mother; she paid all of the real estate taxes and other carrying charges on the property and made and paid for certain improvements thereon.
There was also proof that the defendant and her husband lived in the upper apartment of the premises until 1955, and for several years paid to the decedent $50 per month while the latter paid nothing for the apartment that she and her husband occupied; that when the defendant vacated the upper apartment the decedent paid for the rental advertisement in the newspaper and executed, as landlord, a written lease with the new tenant. In addition, petitions for the decontrol of the apartment were signed solely by the decedent, and the net income and profit from the operation of the premises were retained by her without ever accounting therefor to the defendant who never claimed any deduction for depreciation in her own income tax returns.
The proof also shows, however, that during the time defendant occupied the second-floor apartment, she and her husband expended approximately $2,000 for her living quarters and installed a new bathroom. It further appears that the defendant was close to her mother, enjoying throughout an intimate and happy relationship with her. In view of this relationship it cannot, in the court’s opinion, be said that the decedent’s retention of the rents, payment of the bills and management of the property was unusual or indicated that the joint tenancy was not real. After the receipt of the gift of her mother’s property by the creation of such joint tenancy, it is understandable that the daughter was reluctant to curtail her mother’s continued management and supervision of the property. That is why she never sought an accounting of any rents and profits derived therefrom, and the $50 per month which she paid while occupying the second-floor apartment was no more than a contribution towards the carrying charges, although referred to as “rent”. Obviously the true rental value of the apartment was $100 per month, which is the rental that the new tenant paid immediately after the defendant vacated the apartment.
Had the decedent conveyed the entire fee to the defendant, or had she given the joint tenancy to a stranger and pursued *332 the same course of conduct with regard to the property, that, no doubt, would have created strong suspicion that the conveyance was illusory. The proof here, however, fails to establish the essential elements of an illusory transfer. The deed was executed by the decedent and delivered to the defendant seven years prior to decedent’s death. Significantly, the deed was recorded promptly and was in defendant’s possession at the time of her mother’s death. The court, therefore, finds that a definite, unreserved and irrevocable conveyance was made by the decedent to the defendant and that the transfer was absolute in the lifetime of the decedent who divested herself of all power to recall it. The fact that by the conveyance in question decedent retained a joint tenancy therein, did not of itself, render the conveyance illusory. As joint tenants, the decedent, together with the defendant, had but one full joint ownership in the property; each was a joint tenant of the whole for the purposes of tenure as well as survivorship. (Krause v. Krause, 285 N. Y. 27, supra; Matter of Tilley, 166 App. Div. 240, affd. 215 N. Y. 702; Matter of Lorch, 33 N. Y. S. 2d 157.) In continuing to represent herself as the owner after the conveyance, decedent was consistent with the rights she retained as joint tenant.
Matter of Halpern (303 N. Y. 33) involved a discovery proceeding by an executrix to bring into the estate of her deceased husband four separate bank accounts which were set up as Totten trusts in favor of a grandchild. Notwithstanding that the decedent retained the power in his lifetime to revoke these trusts and was in a position to dissipate the funds on deposit, the court held that the trusts were real and not merely colorable or pretended and therefore, constituted valid transfers with legally fixed effects. The situation in the case at bar is stronger for sustaining the validity of the conveyance, for here the decedent had no power to recall or to revoke the joint tenancy. The fact that the consideration was nominal is of no importance, for as stated by Mr. Justice Botein in Hart v. Hart (194 Misc. 162, 164, 767, affd. 274 App. Div. 1036), “ The status of the plaintiff under section 18 does not enable [him] to nullify transfers made by the decedent during [her] lifetime simply because they were made without consideration. The statute constitutes ‘ a restraint only on testamentary powers. It did not refer in any way to non-testamentary powers. ’ (Mitchell v. Mitchell, 265 App. Div. 27, 29.)”
In view of all of the foregoing the creation of the joint tenancy in the real property in question must be held to have been real, not illusory. Accordingly, the complaint is dismissed *333 on the merits. In the summary proceeding which was consolidated with this action, the defendant landlord is granted a final order of possession of that portion of the premises now occupied by plaintiff Max Kaufman as the tenant in that proceeding.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice. There will be no costs.