Nathan R. Sobel, S.
In this proceeding by a surviving spouse to determine the validity and effect of a notice of election, the answer of the respondent executrix raises novel questions concerning the construction of EPTL 5-1.1, the right of election statute. Although sponsored by and carefully drafted under the direction of the Bennett Commission on Estates (Temporary State Comm, on Modernization, Rev. and Simplification of Law of Estates, Third Report [1964], pp 109-233; Fourth Report [1965], pp 137-153; Fifth Report [1966], pp 95-107) the statute is in some respects perplexing to litigants. A joint effort of the Law Revision Commission and the Surrogates Association is presently directed toward clarification.
The particular issue raised in this proceeding is the effect of *484 an election against testamentary substitutes on a "small” (less than $10,000) testamentary elective share trust.
Testator died in 1973. His will was executed in the same year. Since he was survived by both his wife and daughter, the widow’s elective share is one third of the net estate. (EPTL 5-1.1, subd [c], par [1], cl [B].) His will disposed , of one half of his estate outright to his daughter. To satisfy his wife’s elective share, testator disposed of the remaining half to her in trust for life, remainder upon her death to the daughter. The daughter is the executrix.
Since no account has been filed as yet, we use approximate figures. It is represented that the net testamentary estate will be approximately $9,000 of which $4,500 will comprise the principal of the elective share trust.
However, there are substantial "testamentary substitutes” in the nature of Totten trusts, some for the benefit of the daughter ($45,000) and others for the benefit of the daughter’s children ($24,000) — total $69,000. There are none for the benefit of the widow. Against these testamentary substitutes, it is conceded that the widow has a right of election. The daughter-executrix has requested directions concerning the effect of the widow’s election upon the testamentary elective share trust. In this regard from a reading of the statute her attorney advances several novel contentions. To represent the infant beneficiaries of several of the Totten trust accounts the court has appointed as guardian ad litem Professor Samuel Hoffman, a staff counsel to the Bennett Commission and the author of the McKinney’s Commentary to EPTL 5-1.1 (McKinney’s Cons Laws of NY, Book 17B, pp. 561-570). The court has borrowed from his illuminating report in the discussion which follows.
I
To place the statutory directions in proper context it is helpful to consider the surviving spouse’s ("widow” for convenience) rights in the absence of any testamentary substitutes.
The net estate is $9,000; the widow’s elective share is $3,000. To satisfy her elective share, testator has created a testamentary trust of one half his estate ($4,500) which is in excess of her elective share.
The statute does not however permit "small” (less than $10,000 principal) elective share trusts. Clause (E) of section 5- *485 1.1 (subd [c], par [1]) provides: "Where the elective share of the surviving spouse does not exceed ten thousand dollars, the surviving spouse has the right to take the elective share absolutely, in lieu of any testamentary provision for his benefit.”
It is stressed that this is an absolute right of election to take the elective share in lieu of any testamentary elective share trust. Therefore in our case the widow takes absolutely her elective share of $3,000 from the principal of the trust. Since this is in lieu of the testamentary trust, the trust terminates and the remainder of $1,500 accelerates for the benefit of the remainderman daughter who receives the $1,500 outright in addition to her disposition of $4,500 under the will. It is stressed that irrespective of the principal of such a small (less than $10,000) elective share trust, the widow takes only her elective share. If the trust principal is greater than her elective share she must make a considered choice either to elect or allow the will to stand. Thus, if in this case testator had placed his entire net estate ($9,000) in trust for his widow and she chose to elect, she would receive only $3,000 and the balance would accelerate for the benefit of the remainderman.
It is observed parenthetically that this statutory absolute right of election against "small” (less than $10,000) elective share trusts is unrelated to other statutory provisions applicable to over $10,000 elective share trusts. As against such trusts the widow has the "limited” right to elect to withdraw $10,000 for "immediate necessities” from the principal of such trust provided she does not receive the sum of at least $10,000 from other dispositions for her benefit under the will or from testamentary substitutes for her benefit. (See EPTL 5-1.1, subd [c], par [1], els [D], [G].) It is observed that whenever the right. of election is a "limited” right the terms of the will remain "otherwise effective.”
II
We turn to the consideration of the effect of the widow’s election against the testamentary substitutes on the testamentary trust for her benefit. We have observed that where the widow’s elective share is less than $10,000, she has the right to take her elective share absolutely in lieu of the testamentary trust for her benefit.
However by electing against the testamentary substitutes *486 her elective share is now over $10,000; the above-quoted clause (E) is no longer applicable.
We look elsewhere in the statute for directions. Admittedly the statutory directions are confusing to litigants — perhaps unavoidably so since provision was required to be made for so many contingencies in the single section.
The answer is found in the definitions in clauses (A) and (C) when applied to the directions of clause (H) (EPTL 5-1.1, subd [c], par [1]):
(A) "For the purposes of this paragraph [subd (c), par (1)], the decedent’s estate includes the capital value, as of the decedent’s death, of any property described in subparagraph [par] (b)(1). [Testamentary substitutes.] * * *
(C) "The term 'testamentary provision’ as used in this paragraph [subd], includes, in addition to dispositions made by decedent’s will, any transaction described as a testamentary substitute in subparagraph [par] (b)(1). * * *
(H) "Where the aggregate of the testamentary provisions for the surviving spouse, including the principal of a trust, an absolute testamentary provision or any other kind of testamentary provision, is less than the elective share, the surviving spouse has the limited right to elect to take the difference between such aggregate and the amount of the elective share, and the terms of the instrument making such testamentary provisions remain otherwise effective. In every estate, the surviving spouse has the limited right to withdraw the sum of ten thousand dollars if the elective share is equal to or greater than that amount. Such sum, however, is inclusive of any absolute testamentary provision. Where a trust is created with income payable to the surviving spouse for life, such sum of ten thousand dollars or any lesser amount necessary to make up that sum is payable from the principal of such trust.”
Clause (H) by its terms could be applicable to the aggregate of "testamentary provisions” for the surviving spouse made solely in the will. But the definitions in clauses (A) and (C) make clause (H) also applicable whenever there are in addition to testamentary dispositions in the will also testamentary substitutes in favor of the surviving spouse or others outside the will. Dispositions in the will and testamentary substitutes passing outside the will are included within the definition in clause (C) of a "testamentary provision.”
Clause (H) and the definitions serve also a separate purpose. *487 By requiring the "aggregate” of testamentary dispositions and testamentary substitutes to be considered in determining whether a right of election exists, it prevents a surviving spouse who receives more than her elective share under the will from electing solely against testamentary substitutes. It compels the aggregate of all "testamentary provisions” (testamentary dispositions and testamentary substitutes) to be considered in determining whether a right of election exists. For example, in the instant case, Mrs. Handler was given more than her elective share under the will but less than her elective share when the aggregate of all testamentary dispositions in the will and all testamentary substitutes outside the will are added together. The testamentary provisions "for the surviving spouse” are then less than her elective share and clause (H) governs her rights.
In addition, the quoted statutes give directions for (1) computing the amount of the elective share and (2) determining the effect of the exercise of the right of election on other provisions of the will.
In computing the amount of the elective share, the quoted statutes direct that to the net testamentary estate be added the total of all testamentary substitutes, those in favor of the surviving spouse and those in favor of others. To that total the elective share fraction is applied, whether one half or one third, to reach the gross elective share. From the gross elective share are then deducted all "testamentary provisions for the surviving spouse” whether absolute testamentary provisions, testamentary provisions in trust (in which case the capital value, not the value of the life interest, is used) and all testamentary substitutes of which the surviving spouse is the beneficiary. (See Matter of Schlosser, 73 Misc 2d 380.)
Following these directions the "estate” is $78,000 ($9,000 plus $69,000). The gross elective share of the widow is one-third, $26,000. Since she receives no absolute dispositions under the will or testamentary substitutes of which she is the beneficiary, there is deducted from gross elective share of $26,000 only the capital value ($4,500) of the testamentary disposition in trust.
Her net elective share is $21,500 ($26,000 minus $4,500). This sum she collects ratably (EPTL 5-1.1, subd [d], par [2], cl [B]) from all other beneficiaries of the estate. Since the daughter receives a testamentary disposition of $4,500 and $45,000 in testamentary substitutes (total $49,500) and her children *488 $24,000 in testamentary substitutes, the widow collects her $21,500 roughly 67 per cent from the daughter and 33 per cent from the children.
Clause (H) provides that such an election against both testamentary assets and testamentary substitutes is a "limited” right of election and the "terms of the instruments making such testamentary provisions [the will and Totten trusts] remain otherwise effective.” The terms of the elective share trust ($4,500) therefore remain effective and the widow receives cash of $21,500 in addition to her trust.
It will be observed that under the provisions of clause (H) if the cash received by the widow is less than $10,000 from all sources other than her trust whether by absolute disposition under the will, by testamentary substitute for her benefit or' by election against testamentary substitutes for the benefit of others (cl [C]) the testamentary trust for her benefit will be invaded to the extent necessary to provide $10,000 in cash for her "immediate necessities.”
Ill
We turn to the consideration of a contention made by the attorney for the daughter executrix. He reads clause (A) heretofore quoted as requiring the widow’s elective share ($21,500) to be returned to the "estate” to augment the testamentary trust increasing the principal from $4,500 to $26,000. Recognizing that the daughter as remainderman of that trust will benefit from the ratable contribution from the children’s Totten trusts, he suggests that to the extent of their contribution the children should become "constructive” remaindermen.
The contention is rejected. The attorney overlooks the statutory qualification in clause (A) that the testamentary substitutes are "part of the decedent’s estate” only "for the purpose of this paragraph” (EPTL 5-1.1, subd [c], par [1]). It is part of the estate only for the purpose of computing the amount and determining the effect of the widow’s election — not for the purpose of changing the provisions of testator’s will.
Parenthetically and in the above regard, it is observed that prior to the enactment of the statute which gave to the surviving spouse the right to elect against the five inter vivos transactions designated as "testamentary substitutes” under subdivision (b) of EPTL 5-1.1, the surviving spouse had no *489 right to elect against a testator’s inter vivos transfers except those found by the courts to be "illusory.” A transfer was illusory only when in fact the testator retained effective ownership of the asset. (Matter of Halpern, 303 NY 33.) Such an asset would of course become an estate asset; the returned asset would augment the widow’s elective share as well as the shares of other will beneficiaries.
The Bennett Commission in designating the five specified inter vivos transactions as "testamentary substitutes” rejected the "illusory” test. These five devices were declared testamentary substitutes per se whether or not testator retained ownership of these assets. These are not returned to the estate as estate assets to augment the shares of the will beneficiaries.
When the right of election is exercised against "testamentary substitutes” the fund does not become an estate asset over which the executor exercises administrative responsibility. It is returned to the surviving spouse to augment the elective share and only as directed in the statute. (Temporary State Comm, on Modernization, Rev. and Simplification of Law of Estates, Third Report [1964], pp 123-130.)
Clause (A) is construed to read: "For the purpose of computing the elective share and determining the effect of the exercise of the right of election, the decedent’s estate includes the capital value, as of the decedent’s death, of any property described in paragraph (1) of subparagraph [subdivision] (b) (testamentary substitutes).”
Settle decree.