39 N.Y.2d 934 (1976)
In the Matter of The Estate of Max Crystal, Deceased. Jerome M. Crystal, as Executor of Max Crystal, Deceased, et al., Respondents; Helen Crystal, Appellant.
Court of Appeals of the State of New York.
Argued May 4, 1976.
Decided June 17, 1976.
Philip Handelman and Robert M. Trien for appellant.
Bernard Sherl for petitioner-respondent.
Maurice Shire and Morton M. Bass for Irene Zisfein, respondent.
Chief Judge BREITEL and Judges JASEN, JONES, FUCHSBERG and COOKE concur in memorandum; Judge WACHTLER dissents and votes to reverse in a separate opinion in which Judge GABRIELLI concurs.
*935 MEMORANDUM.
Order of the Appellate Division affirmed, with costs to all parties filing separate briefs payable out of the estate.
*936 The four agreements between decedent and others, including corporations with which he had been associated in his lifetime, providing for the installment purchase of his shares of stock in the close corporations and for specified retirement benefits, were not illusory transfers or agreements within the meaning of the rule in Newman v Dore (275 N.Y. 371, 379). On the contrary, they conformed to the tests established in Matter of Hillowitz (22 N.Y.2d 107, 110) and Matter of Gross (35 AD2d 830, 831, affd 29 N.Y.2d 739). On any view decedent yielded control over the principal of the sums to be paid. The retained right to designate the beneficiary of the balances remaining upon decedent's death did not, for the purposes of the Statute of Wills, create testamentary dispositions (Matter of Hillowitz, supra; Matter of Gross, supra).
WACHTLER, J. (dissenting).
This appeal presents the issue of whether a husband may effectively defeat his wife's right of election by virtue of certain designations of beneficiaries made during his lifetime. I disagree with the majority's conclusion that as a matter of law these were not illusory transfers and would reverse and remit.
The appellant, Helen Crystal, married Max Crystal in 1955. At that time he was a widower with two children. After living together for some five years they were separated pursuant to a decree granted by Supreme Court, New York County. In 1962 Max obtained an ex parte Mexican divorce which was subsequently declared null and void in New York. During this time Max purported to marry one Irene Zisfein, the respondent-respondent. Thereafter, the decedent instituted a divorce action against Helen Crystal in Florida during the contest of which, in March of 1969, Max died.
Two years before he died the appellant's husband arranged to liquidate his holdings in various close corporations. Toward this end and by way of retirement he entered into four agreements which provided for deferred payments of one half a million dollars. Each agreement recognized the decedent's right to designate beneficiaries to receive payment in the event that he died before receiving full payment. Simultaneous to the execution of the primary agreements the decedent executed several designations of beneficiary to persons other than the appellant wife. Prior to full payment, the appellant's husband died and she sought to exercise her statutory right of election. However, the executor refused to acknowledge her *937 claim and proceeded as though the designations had removed the property from the estate.
The instant accounting proceeding was instituted by the executor. Helen Crystal filed objections claiming, inter alia, that the designating instruments were illusory transfers in derogation of her right of election (EPTL 5-1.1).
At the outset, I would emphasize the applicability of strong policy considerations with respect to a surviving spouse's right to elect against nontestamentary transfers. As of the effective date of the Decedent Estate Law (L 1929, ch 229, § 21, eff Sept. 1, 1930) the common-law estate of courtesy and inchoate right of dower were abolished (Real Property Law, §§ 189, 190). Instead of these antiquated and cumbersome law devices the rights of a surviving spouse were to be insured by the statutory right of election.
The purpose of this modernization was two-fold  to enlarge and protect the rights of the widow and to assure the freer alienability of property (L 1929, ch 229, § 20; Powers, Illusory Transfers and Section 18, 32 St John's L Rev 193). There was, however, a glaring inconsistency in the new scheme  a husband could denude his estate by gratuitous inter vivos transfers thereby rendering her right of election a hollow right (Third Report of the Temporary State Commission on the Law of Estates [1964], Appendix A, pp 117-141; see, also, Note, Proposed Changes in the NY Law of Estates, 28 Col L Rev 1088, 1094). To impede the facility with which husbands circumvented the widow's statutory rights by inter vivos transfers, the doctrine of illusory transfers was developed.
The first case to receive considerable attention in applying this doctrine was Bodner v Feit (247 App Div 119; see Third Report of Commission on the Law of Estates, pp 119-120, and authorities cited there). In Bodner the First Department in attempting to balance the right to free alienation with the surviving spouse's right of election articulated a dual test by which to evaluate an inter vivos transfer. One aspect to consider was the degree of control retained and the other was the motive or intent underlying the transfer.
In the leading case of Newman v Dore (275 N.Y. 371) our court rejected the motive or intent test (at p 379) and adopted the retention of control test. There the decedent had executed certain trust agreements three days before his death. The trust deeds recognized the decedent's right to the income during his life as well as the right to revoke at will. In *938 addition the decedent retained control over the manner in which the trustees exercised their powers. Putting substance over form our court concluded that under those circumstances the transfer of property was illusory. The test applied was whether the husband had actually divested himself of ownership or whether he had effectively retained control so as to render the conveyance illusory (at p 380; Krause v Krause, 285 N.Y. 27).
Despite the fact that the Newman court explicitly rejected the motive or intent test, subsequent cases gradually shifted toward an approach which considered whether there was an intent to transfer actual title (see Marine Midland Trust Co. v Standford, 256 App Div 26, affd 281 N.Y. 760; Matter of Ford, 279 App Div 152, affd 304 N.Y. 598). With this the impact of the legislative policy to protect the surviving spouse, which had spawned the doctrine of illusory transfers, gradually disintegrated. The first direct assault came in Inda v Inda (288 N.Y. 315) where we held that although the decedent never intended to divest himself of the ownership of a joint bank account, there had been no illusory transfer in view of the conclusive presumption that such accounts are the property of those named as joint tenants with a right of survivorship (Inda v Inda, supra; Banking Law, § 239).
Any doubt that the retention of control test articulated in Newman (supra) had been supplanted by the intent test was fostered by Matter of Halpern (303 N.Y. 33). There the estate had been reduced by virtue of the establishment of three Totten trusts to persons other than the surviving spouse. The majority in our court (p 37) concluded that these accounts "if real and not merely colorable or pretended [were] valid transfers with legally fixed effects". The Halpern decision has been interpreted in two ways. One view was that Halpern overruled Newman and that the only way a transfer would be considered illusory is if it was an invalid, sham transfer (see, e.g., Atkinson, The Law of Succession, 26 NYU L Rev 954, 957). The opposing view was that Halpern simply created a special test with respect to Totten trusts (see, e.g., 3 Syracuse L Rev 129).
One positive result of the befuddled status of the illusory transfer doctrine after Halpern was a concerted effort to rectify the defect in the statute. This effort was successful and the revised statute incorporated the equivalent concept of testamentary substitutes. Under the new statutory scheme *939 (presently EPTL 5-1.1, subd [b]) applicable to transfers after August 31, 1966, certain specified inter vivos dispositions are to be included in the net estate subject to the surviving spouse's elective right regardless of whether or not the dispositions benefited the surviving spouse. The enumerated transfers include gifts causa mortis, Totten trusts, joint bank accounts, joint tenancies, or any dispositions where the decedent retains the power to revoke or to consume the principal (EPTL 5-1.1, subd [b], par [1], cls [A-E]).
Due to the fact that Max Crystal executed his will and a codicil prior to the effective date of the new statute, the question before us must be determined by the doctrine of illusory transfers (EPTL 5-1.1, subd [c]; see, also, Hoffman, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL, p 564). The Surrogate below was of the view that Halpern limited illusory transfers to those situations where the transfer itself is invalid. Accordingly, the trial court as affirmed by the Appellate Division concluded that since the transfers here were not being challenged as invalid they could not be considered illusory and granted summary judgment to the estate. I believe this analysis and conclusion is wrong for several reasons.
In the first place, the doctrine of illusory transfers was created to give effect to the strong, unequivocal declaration of the Legislature that the aim and purpose of the revised law was to enlarge and protect the rights of the surviving spouse (L 1929, ch 229, § 20; see, generally, Powers, Illusory Transfers and Section 18, 32 St John's L Rev 193). Secondly, there is ample precedent to support the retention of control test; a test which most directly effectuates the Legislative intent (e.g., Newman v Dore, 275 N.Y. 371, supra; Krause v Krause, 285 N.Y. 27, supra). The majority erroneously applies Newman (supra), in concluding that the challenged dispositions were not illusory. What the Newman court meant by the word illusory was not whether the transfer was intended by the parties to be valid or a sham (see Rohan, NY Civ Prac, EPTL 5-1.1, par [6]). On the contrary, the court noted that whether or not the transfer was valid need not be determined and assumed arguendo that the challenged transfers were legally valid (Newman, 275 NY, at p 380, supra). Rather the determinative question was whether the donor preserved his enjoyment or control over the property (p 380). Finding the conveyances before it illusory, the court remarked that the settlor *940 had reserved substantially the same rights to enjoy and control the property as he enjoyed prior to the making of the trust deeds (at p 378). The same test should be applied in the case at bar  whether or not Max Crystal retained sufficient enjoyment and control so as to divest himself of ownership? A transfer which does not relinquish control cannot be considered real, despite any legal efficacy it may have.
Lastly, although there was erosion of the illusory transfer doctrine in subsequent decisions (e.g., Inda v Inda, 288 N.Y. 315, supra; Matter of Halpern, 303 N.Y. 33, supra), the Legislature has reaffirmed its intent to enlarge and protect the rights of surviving spouses (EPTL 5-1.1, subd [b]). Indeed, the Legislature has done more than reaffirm a strong policy previously articulated, it has directly abrogated the Halpern and Inda decisions by designating Totten trusts and joint accounts as testamentary substitutes. In light of this uncharacteristically strong and persistent legislative intent, we should not adopt the test of Halpern as the courts below did. Rather we should apply the doctrine of illusory transfers as the Legislature has clearly indicated it should be applied  to protect the surviving spouse from inter vivos divestiture by the decedent. Such an application in the instant case would necessitate reversing and remitting to the trial court to determine whether Max Crystal retained a substantial degree of control over the property during his lifetime thus rendering the dispositions illusory in derogation of his widow's elective rights.
Order affirmed, etc.