Nathan R. Sobel, S.
Another unresolved issue is raised in this proceeding with respect to the right of a surviving spouse *373 (here a husband) to elect against a testamentary substitute, viz., a joint bank account created by his deceased spouse. The right to elect against testamentary substitutes has been available to the surviving spouse since August 31, 1966 (EPTL 5-1.1, subd. [b]).
The five inter vivos transactions which under the cited statute are treated as “testamentary substitutes ” are — (A) gifts causa mortis-, (B) Totten trust accounts; (C) joint savings accounts; (D) other property owned in joint tenancies; and (E) revocable transfers in trust.
The new statute has a history which is pertinent. Upon the recommendation of the Foley Commission, the Legislature had enacted section 18 of Decedent Estate Law, effective September 1, 1930. By that statute a surviving spouse became entitled to elect against the will of the deceased spouse which made no or insufficient provision for the survivor. The statute before and after enactment was criticized in some quarters for failure to include a right of election against inter vivos transactions as well as testamentary assets. There is little doubt however that the omission was intentional (Cox, Surviving Spouse’s Right of Election, 32 St. John’s L. Rev. 164, 169 n. 42 [1958]). There followed a history of litigation by surviving spouses over inter vivos transactions alleged to be “ illusory ’ ’. At first, courts made an obvious effort to give support to such claims. But with the passage of time these decisions became more and more feeble. The manifest reason was that claims under section 18 of illusory transfers came into play only where the marriage relationship had deteriorated. (SeedPowers, Illusory Transfers and Section 18, 32 St. John’s L. Rev. 193-217 [1958].)
The Bennett Commission on Estates reconsidered the entire problem (Third Report [1964] App. A; Fourth Report [1965] App. 10; Fifth Report [1966] App. B). It decided to allow a surviving spouse to elect against certain inter vivos transactions under the following circumstances:
Where a will is involved (1) the will must have been executed after August 31,1966; (2) the inter vivos transaction must have been effected after August 31,1966; and (3) the transaction must have been effected during the marriage. If all three conditions are present, the transaction is a “ testamentary substitute ’ ’ against which a surviving spouse has the same right to elect as against testamentary assets. If any one of the conditions is not present then the transaction is an “ exempt ’ ’ transaction against which there is no right to elect.
*374 Where there is an intestacy (1) decedent must have died intestate after August 31,1966; (2) the inter vivos transaction must have been effected after August 31, 1966; and (3) during the marriage. The same rules apply. All three conditions must be present for the transaction to be considered a testamentary substitute. If any one of the conditions is not present the inter vivos transaction is “ exempt ” from the right of election by the surviving spouse.
The inter vivos transactions involved in the instant proceedings are Totten and joint accounts. The statutes defining Totten and joint accounts as testamentary substitutes provide “ Money deposited, after August thirty-first, nineteen hundred sixty-six ” in a Totten or joint savings account. (EPTL 5-1.1, subd. [b], par. [1], subpars. [B], [0]; formerly in Decedent Estate Law, § 18-a; italics supplied.)
The facts in the instant case are stipulated. Two accounts are involved. Mrs. Filfiley’s will was executed after August 31, 1966 and all transactions discussed took place during the marriage. She died December 24, 1966. Her husband has duly filed a notice of election against testamentary assets. He (rather, his estate since he died after filing his notice of election) seek(s) to elect against two accounts now described.
On May 1,1950 Mrs. Filfiley transferred funds in her personal account into an account in trust for her daughter Alice. It continued an active account with deposits and withdrawals. It was an1 ‘ exempt ’ ’ Totten trust account since created prior to August 31, 1966. On October 18, 1966 however, when there was $16,000 on deposit in the account, Mrs. Filfiley changed the form of the account from Totten to joint with the same beneficiary, her daughter Alice.
A second account had the same history. It was an ‘1 exempt ’ ’ Totten account in trust for Alice. On October 18, 1966 it was converted into a joint account for Alice.
In both cases no new deposits were created. Merely the form of the account was changed by executing new signature cards.
Mr. Filfiley’s estate contends that by such a change effected after August 31, 1966 the exempt accounts became “testamentary substitutes ’ ’.
In Matter of Kleinerman (66 Misc 2d 563) this court discussed another aspect of this problem. There an “ exempt ” account had been transferred after August 31, 1966 from one bank to another without change in form or amount. This court held that such a transfer did not transform an exempt account into a *375 “testamentary substitute”. The court’s reasons were there discussed at length. These are briefly summarized here.
There will be found nothing at all in the history of the ‘1 testamentary substitute ’ ’ statute which is the least bit helpful in deciding the issue here presented. This includes the discussions by the members and staff of the Bennett Commission. It must be concluded that no thought at all was given to the problem before the court or- related problems.
In Kleinerman (supra), there was a change of banks after August 31, 1966 for the purpose of increasing the dividends. There was “money deposited” (EPTL 5-1.1, subd. [b], par. [1], subpars. [B], [C]).
In this case there is merely a change after August 31, 1966 in form of the account from Totten to joint. There was no ‘ 6 money deposited ’ ’. Other related situations would be a substitution after August 31, 1966 of new beneficiaries of a Totten or joint account. There would be no “ money deposited ”,
It is suggested that not only is there no discernible legislative intention but also that little significance should be attached to the statutory language. Any rule which is established should rest on policy and should fit all the situations discussed, viz., transfer of an exempt account without change from one bank to another (Kleinerman, supra); transformation of a Totten to a joint account or vice versa (Matter of Filfiley, 63 Misc 2d 824); change of beneficiary of a Totten or joint account. Should any such “ change ” after August 31,1966 transform an “ exempt ” transaction into a ‘ ‘ testamentary substitute ’ ’ í
While the Legislature manifested no particular intention with respect to such “ changes ”, it did manifest a general policy.
1. The new statute became a law on July 2, 1965 (Decedent Estate Law, § 18-a). It became effective September 1,1966 some 14 months later. Testators were given an opportunity to “ defeat ” by appropriate action any right to elect against future inter vivos transactions. So long as a will is dated on or before August 31, 1966 there is no right to elect against past or future inter vivos transactions. (See Hendrickson, “The Spouse’s New Bight of Election — and What to Do, Not Do, Undo and When ”, N. T. State Bar J., Aug. 1966.) This hardly signifies a policy of strict construction.
2. If the new statute is strictly construed it may result in inequity. The new statute includes as testamentary substitutes transactions ‘ ‘ benefiting the surviving spouse or any other person ” (EPTL 5-1.1, subd. [b], par. [1]). Testator may have created Totten accounts before August 31, 1966 for his wife and *376 Ms cMldren. If he “ changes ’ ’ after August 31, 1966 in any one of the ways discussed, the accounts in favor of his children, his surviving wife will be able to elect against his testamentary assets and the testamentary substitutes while retaining as “ exempt ” the account in her own favor. She will receive more than her intestate or elective share.
3. A strict policy in favor of testamentary substitutes will not deter inter vivos transfers. Many inter vivos transfers are not included within the statute; the most common are plain outright gifts (not causa mortis). Others are excluded by statute (EPTL 5-1.1, subd. [b], par. [2]). This too is a manifestation of liberal policy.
In summary: The purpose of the new statute was to include as testamentary assets all “substitutes” in the form of the five inter vivos transactions effected after August 31, 1966. The policy thus expressed was that assets owned by the spouse after August 31, 1966 were not to be diverted to defeat the right of election by the survivor. What had been diyerted before August 31, 1966 was to continue exempt. Any “ change ” in previously exempt transactions which did not return the asset to the exclusive ownership of the spouse should continue to remain exempt. This conclusion appears to be in accord with the policy, albeit unexpressed, of the new statute.
Under such a construction a transfer of an account from trust to joint form or vice versa would not change its exempt character. A redeposit of the trust or joint account without change in form in another bank would not change its exempt character. Nor would a substitution of beneficiaries it would seem.
According to the stipulation of facts approximately $412 was deposited in the joint accounts by Mrs. Filfiley after August 31, 1966. The estate of Mr. Filfiley has the right of election against that amount plus interest, only to the extent of one third (EPTL 5-1.1, subd. [c], par. [1], subpar. [B]).