S. Samuel Di Falco, S.
The nature of these proceedings and the facts were set forth in this court’s decision dated November 8, 1974 which set this matter for a hearing which was held on February 20, 1975. The parties were afforded time to file memoranda.
In these proceedings to obtain a determination as to the validity and effect of an election to take an elective share of the estate, the beneficiaries of joint accounts and Totten trusts seek an order releasing the sum of $368,209.17. This sum represents approximately 56.25996% of the assets of the decedent.
A determination is required as to which and how much of these accounts are deemed a testamentary substitute.
The decedent and the surviving spouse married on August 9, 1950. He died intestate in June, 1973 and without issue. The right of a surviving spouse to elect against testamentary *85 substitutes is governed by EPTL 5-1.1 subd [b]. Transactions whether in trust or otherwise which fall within the purview of the statute may qualify as testamentary substitutes if the decedent made the transaction subsequent to the marriage and after August 31, 1966. Where a surviving spouse has not received her full elective share the recipients of the testamentary substitutes must contribute on a prorata basis to make up the deficit.
As originally enacted, section 18 of the Decedent Estate Law gave to a surviving spouse a personal right of election against a will to take his or her share as in intestacy. The elective rights of the surviving spouse were radically changed under the laws of 1965 and 1966, under the sponsorship of the Temporary Commission on Estates, frequently called the Bennett Commission. The commission found that a decedent’s spouse could thwart the policy underlying section 18 by the employment of certain devices in the nature of inter vivos transactions which reduced the amount of assets in the estate and thereby effectively made the surviving spouse’s right of election an absurdity. A complete legislative readjustment of the property rights of surviving spouses was enacted by sections 18-a and 18-b of the Decedent Estate Law as amended in 1965 and again in 1966. These amendments and additions were incorporated into the Estates, Powers and Trusts Law which became effective September 1, 1967. Not only does a widow of the testate decedent have the right to elect but the new statute concerns itself also with the right of the surviving spouse to elect against a decedent’s intestate estate. Where, as here, there is total intestacy, the right of election is available against the intestate estate including the transactions involved in this case, known as testamentary substitutes, e.g. the joint savings accounts and the Totten trust accounts, provided that these transactions occurred after August 31, 1966. The elective share of the surviving spouse is reducible by the capital value of any property passing to such spouse in intestacy under EPTL 4-1.1 and by testamentary substitute. (See Practice Commentary by Prof. Samuel Hoffman of Brooklyn Law School in McKinney’s Cons Laws of NY, Book 17B, EPTL 5-1.1, p 564.)
The subject savings accounts may be categorized as follows:
(i) Deposits of moneys made by decedent in Totten trust accounts subsequent to August 31, 1966;
(ii) Deposits of moneys made by decedent in Totten trust *86 accounts subsequent to August 31, 1966 (with the beneficiaries unchanged) from funds withdrawn from Totten trust accounts maintained at other savings banks;
(iii) Deposits of moneys made by decedent in Totten trust accounts subsequent to August 31, 1966 (with the beneficiaries changed) from funds withdrawn from Totten trust accounts maintained at other savings banks;
(iv) Deposits of moneys made by decedent in joint savings accounts prior to August 31, 1966, which accounts were thereafter closed and the funds contained therein redeposited by decedent subsequent to August 31, 1966 in other savings banks in the form of Totten trust accounts.
In his Supplementary Practice Commentary to McKinney’s EPTL 5-1.1, (p 89) Prof. Patrick J. Rohan of St. John’s Law School discusses "testamentary substitutes” and their effective dates: "A major gap in the treatment accorded 'testamentary substitutes’ under EPTL 5-1.1 is found in the failure of the statute to indicate what the result should be where assets held prior to September 1, 1966, are changed in form after that date. Do such assets thereupon become 'testamentary substitutes’ or do they continue to enjoy the exempt status previously conferred upon them by the terms of EPTL 5-1.1?” Prof. Rohan says "a mere formal change should not cause transactions which took place prior to the effective date of EPTL 5-1.1 to become testamentary substitutes.” (p 89), citing Matter of Kleinerman (66 Misc 2d 563). Most of the cases address this problem in terms of "a mere formal change.”
In the 1965 Supplement to 1964 Report Nos. 1.5C and 1.10B, on page 152 of the Fourth Bennett Commission Report (p 1460; App 10) in discussing EPTL 5-1.1 it is said: "The Association of the Bar of the City of New York recommended 'that the Commission give further study to the problem with a view to the eventual enactment of a single right of election statute, thus eliminating the optional procedure which now appears to be contemplated’. While the enactment of such a statute would be much easier to draft, would simplify the law and would prevent non-probate testamentary assets from escaping the right of election, such enactment would seriously interfere with property settlements which have now been made in good faith and in many cases might be unconstitutional if rights which have now vested in recipients of testamentary provisions were divested by the statute. While it is recognized that on one hand many transfers will escape the right of election *87 and on the other hand the surviving spouse will receive a windfall in that he or she is not charged with such transfers, it is felt better to run that risk rather than the risk of unconstitutionality.”
Matter of Fox (67 Misc 2d 470) also stresses the change in the form of an asset. In that case real property owned before August 31, 1966 was sold after that date. The surviving spouse contended that the proceeds of the sale were testamentary substitutes. The court said (p 472): "At most, the sale constituted a change in the form of the assets”.
In Matter of Filfiley (69 Misc 2d 372, 374, affd 43 AD2d 981) Surrogate Sobel speaks of changing "merely the form of the account” in discussing a post-August 31, 1966 change from a Totten trust to a joint account.
In Matter of McGrattan (76 Misc 2d 873, 876), a very recent case, Surrogate Reagan of Erie County dealt with an inter vivos trust which was executed prior to August 31, 1966 but modified in 1967. The court said in holding that the trust was a testamentary substitute: "The modification of September 14, 1967 was a transaction significant enough to be classified as an inter vivos disposition to be treated as a testamentary substitute for the purpose of election by the surviving spouse under EPTL 5-1.1 (subd [b], par [1], cl [E]).”
In the instant case it is evident that while some of the changes were "merely formal”, some were of a more significant nature.
It is the court’s opinion that the Legislature intended that transfers completely effectuated prior to August 31, 1966 remain untouched by the statute as it presently reads. I rule that all accounts with all money deposited prior to said date and where no significant change in the account was made subsequent to that date are exempt from the widow’s election.
In my opinion, a change in beneficiary brings the account out of the exempt status and makes it a testamentary substitute. This is more than a "mere formal” change. It is a change of a more pervasive nature. A change in beneficiary cannot be said to be "merely formal”. It completely changes the disposition that will be made of this testamentary substitute at the death of the depositor. Another person is selected as the object of the depositor’s bounty. I find that as to those accounts where the beneficiary was changed after August 31, 1966, the funds are testamentary substitutes subject to the right of election of the surviving spouse.
*88 We now treat those accounts where some money was deposited prior to the effective date and some subsequent to it. Prof. Rohan says (9A Rohan, NY Civ Prac, EPTL 5-1.1[5]): "Where the testator has made a transfer prior to September 1, 1966, and subsequently augments the original transaction after that date, only the supplemental portions should be treated as testamentary substitutes.”
Surrogate Sobel addressed the question of testamentary substitutes in Matter of Kleinerman (66 Misc 2d 563) in the context of Totten trusts. Prior to 1960 decedent, in that case, created two Totten trust accounts. On April 11, 1968 he transferred from one bank to another. The widow contended that due to the redeposit after 1966 these accounts became testamentary substitutes. It was the Surrogate’s opinion that the Legislature, in enacting the statute in question, did not consider this particular question: "there is no 'money deposited’ when there is a change or substitution of beneficiary or a change in form of the account. As noted, there is 'money deposited’ when a trust or joint account is transferred from bank to bank. Yet, from the viewpoint of the purpose of the statute rather than its literal terms, it would be anomalous to hold that a mere transfer converts the exempt account into a testamentary substitute but that a change or substitution of beneficiaries does not. The statute may not be read literally. When drafted it obviously did not contemplate the transfers, substitutions or conversions discussed.” (P 565.)
Surrogate Sobel was definite that the making of a new will or the republishing of an old one after August 31, 1966; and depositing additional money in an account after August 31, 1966 made a previously exempt transaction subject to the election. The Surrogate was not certain that a change in beneficiary brings an account out of the exempt status. He indicated in Kleinerman that it would probably be exempt. With this I cannot agree. In his article, "Joint and Totten Savings Accounts — Part 2” (NYLJ, May 9, 1974, p 4), Surrogate Sobel said:
"Q. Assume an 'exempt’ Totten trust account H in trust for son. After Aug. 31, 1966, the son dies and H simply substitutes his daughter as the beneficiary. After H’s death, would W have the right to elect against the new account as a 'testamentary substitute’.
"A. I would hold that the account continues as 'exempt’ simply to be consistent with my other holdings. I have no *89 assurance that I would be correct. There is simply no holding in the lower or appellate courts as a precedent.”
It is my opinion that in changing a Totten trust, while the depositor may not be changing a will, he is in effect making a substantial change in the disposition of his property after death. Totten trust savings accounts have often been referred to as a "poor man’s will” (Bogert, Trusts and Trustees [2d ed], § 47; "New Methods of Creating a 'Poor Man’s Will’ in New York, 53 Col. L. Rev. 132”.) This is in effect a new testamentary plan, employing the device of a testamentary substitute to deprive the widow of her share. This is what the statute sought to prevent.
Surrogate Sobel specifically said in Kleinerman that he was not deciding the collateral issue of what happens when there is a change of beneficiary after August 31, 1966. He indicates that his reasoning on the main issues also applies to this collateral issue. I cannot agree. I feel this is not a mere formal change and clearly violates the intent of the statute.
As to deposits made by decedent in Totten trust accounts subsequent to August 31, 1966: Falling into this category is Term Savings Account No. 14-28230 at the New York Bank for Savings in the name of Peter Agioritis in trust for Bases I. Agioritis. The total amount on deposit as of the date of decedent’s death was $66,795.53. Most of the money was deposited subsequent to August 31, 1966. The account however was opened on September 21, 1964. The court finds that all funds deposited into this account subsequent to August 31, 1966 are not exempt and are to be considered testamentary substitutes. The small portion deposited prior to August 31, 1966 is exempt and is not to be included in decedent’s estate for the purpose of the widow’s right of election.
As to deposits of moneys made by decedent in joint savings accounts prior to August 31, 1966, which accounts were thereafter closed and the funds contained therein redeposited by decedent subsequent to August 31, 1966, in other savings banks without a change of beneficiary in the form of Totten trust accounts:
Dry Dock Time Certificate No. 1.2033-6 in the name of Peter Agioritis in trust for Sevasti Lekovdi is included in this category. On the date of decedent’s death, there was $29,154.31 in this account. This account was created as a trust account on November 15, 1962. On April 2, 1970 the trust account was created into a time certificate which was renewed *90 on February 2, 1972. There were no deposits made into this account after August 31, 1966. I am of the opinion that the funds in this account are exempt funds which are not to be considered testamentary substitutes.
Also in this category is Dry Dock Time Certificate No. 1-2036-9 in the name of Peter Agioritis in trust for Catherine Lekovdi. This account was opened on November 5, 1964 as Trust Account No. 578,999 for Catherine at the Dry Dock Savings Bank. It was converted on April 2, 1970 to a time certificate which was renewed on February 2, 1972. No additional deposits were made after August 31, 1966. This is an exempt account and is not a testamentary substitute.
Time Certificate No. 1-628-048 at the West Side Federal Savings and Loan Association in the name of decedent in trust for Basos Ioannou Agioritis is in part a testamentary substitute subject to election and in part an exempt transaction. This account originated in December, 1955 as Trust Account No. 847407 for Basos.
12/19/55 — Trust Account No. 847407 for Basos was opened.
4/ 3/70 — $50,153 from this account was converted to time certificate No. 602729.
6/30/71 — said funds were converted to time certificate No. 1-615920.
6/30/73 — said funds were converted to time certificate No. 1-628048, the account in issue which was in existence at the date of death.
As of the date of death, there was in this account the sum of $124,201.45. Of that sum, $50,153 had been continuously on deposit in the same bank since long before August 31, 1966, so that this portion of the account, plus the pro rata share of dividends since August 31, 1966, are clearly exempt.
The balance of the funds in this account had been transferred from another bank.
September 9, 1964 — a trust account was opened for Basos in the New York Bank for Savings.
April 3, 1970 — $49,628.88 of this account was transferred to Basos’ account in the West Side Federal Savings & Loan Association already discussed, and formed the basis of the total deposit of $100,000.10 in time certificate No. 602729. With this transfer, the history of this sum is identical with the rest of Basos’ account with West Side Federal.
*91 Transfers from one bank to another for the same beneficiary, I have ruled, are not "deposits” made after August 31, 1966 and are therefore exempt. It appears that of the $49,628.88 which was transferred from the New York Bank for Savings to the West Side Federal Savings & Loan Association on April 3, 1970, $106.14 was deposited on April 24, 1967; $7,000 was deposited on November 19, 1968 and $4,772.63 was deposited on January 2, 1970. Of the funds on deposit with West Side Federal, $6,000 was deposited on November 10, 1969. These four sums are subject to the widow’s right of election. I conclude that of the total amount of $124,201.45 on deposit in this account as of the date of death, the entire amount is exempt except for the sum of $17,878.77.
As to West Side Federal Time Certificate No. 1-627-682 in the name of Peter Agioritis in trust for Kostas L. Agioritis: on the date of decedent’s death, there was $56,108.60 in this account. The court is of the opinion that $36,108.60 of this is exempt and is not a testamentary substitute. A trust account, No. 972-107, for Kostas was opened on July 18, 1966 and on April 10, 1973, the funds were transferred to the present Time Certificate. However, subsequent to August 31, 1966 an additional deposit of $20,000 was made into this account. This $20,000 is not exempt.
As to deposits of moneys made by decedent in Totten trust accounts subsequent to August 31, 1966 (with the beneficiaries unchanged) from funds withdrawn from Totten trust accounts maintained at other savings banks:
New York Bank for Savings Time Certificate No. 45-41010 in the name of decedent in trust for Kostas G. Agioritis appears to fall into this category. At decedent’s death there was $59,601.94 in this account, $14,594.33 having been deposited after August 31, 1966 and hence subject to the widow’s right of election. On July 10, 1957 a trust account was opened for Kostas G. at the Harlem Savings Bank; this entire sum was transferred to the New York Bank for Savings on July 5, 1968 and on July 20, 1970 the New York Bank for Savings account was converted to a special term savings account. There was never a change of beneficiary. This account is. exempt from the widow’s election.
Somewhat more complicated is West Side Federal time certificate No. 3-620-279 in the name of Peter Agioritis in trust for Satirios Kakos and Kostas Kakos.
*92 February 18, 1965 — a trust account in the Harlem Savings Bank was opened for Rostas.
July 1, 1968 — the entire sum was transferred to a West Side Federal Savings & Loan trust account.
July 27, 1970 — the funds were transferred again to Ninth Federal Savings and Loan Association where they were added to funds which had been in trust for Satirios in a certificate of deposit.
July 21, 1971 — the funds were "rolled over” in a new certificate at Ninth Federal.
July 20, 1972 — the deposit was transferred to the West Side Federal Savings & Loan Association.
July 25, 1972 — the funds were "rolled over” into the time certificate in issue and in existence at the date of decedent’s death.
December 29, 1955 — a trust account was opened for Satirios in the West Side Federal Savings & Loan Association.
July 20, 1970 — the account was closed and transferred to the Ninth Federal Savings and Loan Association to be joined with funds in trust for Rostas. The history of the account thereafter is identical with the history for the Rostas account indicated above.
The total amount on deposit in the account on the date of death was $104,424.68. However, substantial amounts were deposited in this account after August 31, 1966. The amounts of these deposits, together with the bank account into which they were deposited, are as follows:
Harlem Savings Bank
September 12, 1966 — $1,000
June 6, 1967 — $1,716.67
June 17, 1968 — $2,200
West Side Federal Savings & Loan Association
July 15, 1968 — $2,000 September 5,1968 — $1,600
July 18, 1968 — $1,927 September 9,1968 — 610
July 23, 1968 — 50 July 7, 1970 — 1,383.60
West Side Federal Savings & Loan Association, Acct. No. 85383
July 8, 1968 — $8,251.27 September 5, 1968 — $ 150
July 10, 1968 — 1,700 November 3, 1969 — 2,000
July 15, 1968 — 153 November 10, 1969 — 2,500
Aug 23, 1968 — 2,849.90
*93 The total of these post-August 31, 1966 deposits is $30,091.44. After subtracting this sum, plus a pro rata share of dividends from the total on deposit as of the date of death of $104,424.68, the balance remaining is exempt.
In respect of these accounts the end result is that the account is payable to both beneficiaries originally named. It cannot be said as to that portion which I have found to be exempt that there was a change in decedent’s plan for disposing of his property.
As to deposits of moneys made by decedent in Totten trust accounts subsequent to August 31, 1966 (with the beneficiaries changed) from funds withdrawn from Totten trust accounts maintained at other savings banks:
A Dry Dock Savings Bank Time Certificate No. 1-2032-8 is in the name of decedent in trust for Athanasios L. Konstantinidis. On the date of decedent’s death there was $28,863.24. On July 14, 1966 the decedent opened an account in trust for Constantine Giotopoulus in the West Side Federal Savings and Loan Association, but on July 7, 1968 these funds were transferred to the Dry Dock in trust for Athanasios and then rolled over to the present time certificate on April 2, 1970. I hold that, because of the change of beneficiary, this entire account is not exempt and is a testamentary substitute against which the surviving spouse can elect.
Also in this category and not exempt and to be considered a testamentary substitute is West Side Federal Time Certificate No. 1-628-049 in the name of Peter Agioritis in trust for Ioanis Agioritis. There was $125,753.84 in this account at the time of decedent’s death.
April 11, 1961 — a trust account was opened at the Central Savings Bank in trust for Amalia B. Agioritis;
July 5, 1968 — the funds were shifted to the Emigrant Savings Bank in trust for the same beneficiary;
July 31, 1963 — a second trust account was opened at Emigrant Savings Bank in trust for Ioanis;
April 2, 1970 — both of the accounts were closed and subsequently;
on April 3, 1970 — a certificate of deposit was opened at West Side Federal Savings and Loan Association in trust for Amalia and Ioanis;
June 30, 1971 — the deposit was “rolled over” into a time certificate in trust for Ioanis only;
*94 June 30, 1973 — the certificate of deposit was "rolled over” into the present time certificate which is in issue and which was in existence at the date of decedent’s death.
It is apparent from the foregoing that only a portion of the funds involved in this account represents a change in beneficiary. To the extent that the funds on deposit represent the funds which were deposited to the account in trust for Ioanis on July 31, 1963, they are a deposit for which Ioanis was always the beneficiary. With respect to those funds, there was only a shift in banks. That portion of this account is exempt.
Now the court treats with an account that cannot be categorized. Dry Dock Savings Bank time certificate No. 1-2031-0 in the name of the deceased in trust for Sophie C. Stasinopoyloy, grandniece, and Anastasios Stasinopoyloy, grandniece, shows a purchase date of April 2, 1970 in the sum of $25,819.78. The time thereon was extended on February 2, 1972 to April 2, 1974. The record reveals the following with respect to a Greenwich Savings Bank account which was the source of the subject Dry Dock time certificate. It is stipulated without regard to its legal effect, that the Greenwich Savings Bank has been unable to furnish any evidence which shows the source of the funds for this account.
There is nothing in the record with respect to this account which indicates that these moneys were deposited before August 31, 1966 and, even if they were, there were changes of beneficiaries that were more than merely formal. It is the court’s ruling that this Dry Dock time certificate is not exempt from the widow’s election.
There is also New York Bank for Savings, account No. 45-25525, in the joint names of decedent and his widow in the sum of $74,851.22. The account reads: "Peter Agioritis or Florence Agioritis or either or the survivor”. This entire account belongs to the widow.
As indicated above the widow’s elective share is reducible by the capital value of any property passing to her in intestacy and by way of testamentary substitutes. Pursuant to EPTL 5-1.1 (subd [b], par [3]) transactions shall be treated as testamentary substitutes in the proportion that the funds on deposit were the property of the decedent immediately before the deposit or the consideration for the property held as joint tenants was furnished by the decedent. The surviving spouse has the burden of establishing the proportion of the decedent’s contribution. Under the express terms of the statute, the court *95 may accept such evidence as relevant and competent on this issue whether or not the person offering such evidence would otherwise be competent to testify.
Over objection I permitted the widow to testify. It was her testimony that after August 31, 1966 she turned over to her husband each and every one of her Social Security checks in the sum of $172. The subject account in New York Savings Bank was opened on February 21, 1973 with a deposit of $15,000 cash drawn on the decedent’s commercial account in the Chemical Bank. I rule that this account was opened with the wife’s money. Computation reveals that $13,416 is the sum of Social Security checks from August 31, 1966 to the opening of the account, with interest that amounts to approximately the sum of $15,000. Accordingly, this sum is to be taken into consideration in computing the widow’s elective share.
Further, the record reveals that the subject New York Bank for Savings account included account No. 5-25525 in that bank opened on March 4, 1965 in the name of Peter Agioritis and Florence Agioritis (the widow). It is apparent that $37,801.05 was deposited in that account prior to August 31, 1966. This sum shall also be taken into consideration when computing the widow’s elective share. Section 5-1.1 makes it quite clear that all deposits made prior to August 31, 1966 are exempt transactions and accordingly such amounts are not to be deemed testamentary substitutes which are required to be deducted from the one-half share of the estate to which the widow is entitled.
Pursuant to the stipulation of the parties at this time the court is rendering a decision only as to which of the bank accounts in the form of testamentary substitutes forms a basis for computation of the widow’s elective share. The exact computation, including the pro rata share of the interest or dividends on these accounts, will be made in the accounting proceeding. The parties further agreed that insofar as this petition seeks the turn over of accounts it is understood that the court will defer a direction for actual turn over for the accounting proceeding.
There is pending before the court a proceeding for partial payment. The Totten trust beneficiaries will, in any event, be entitled to some of these bank accounts or parts thereof irrespective of the final outcome of an appeal. The court grants the application for part payment in their behalf to the extent that 20% of the amount of each account to which the *96 beneficiaries are entitled, according to this decision, on deposit at the date of death of the decedent, be paid to them at this time.
Proceed accordingly. Any party desiring to submit an intermediate order on this decision for the purpose of appeal may do so.