In the Matter of the Estate of PETER AGIORITIS, Deceased. FLORENCE O. AGIORITIS, Appellant-Respondent; MICHAEL A. SAYTANIDES, as Attorney in Fact for VASSILIOS I. AGIORITIS, Also Known as BASOS I. AGIORITIS, and Others, Respondent-Appellant.

First Department, April 29, 1976

*Leonard S. Leaman* for appellant-respondent.

*Edward L. Sadowsky* of counsel *(Peter C. Valente* and *Mona D. Shapiro* with him on the brief; *Tenzer, Greenblatt, Fallon & Kaplan,* attorneys), for respondent-appellant.

BIRNS, J. For the first time we are called upon to construe and apply that provision of the Estates, Powers and Trusts Law (EPTL) which provides a surviving spouse with the right to treat as a testamentary substitute money deposited in Totten trust savings bank accounts after August 31, 1966 (EPTL 5-1.1, subd [b], par [1], cl [B]).

Petitioner initiated a proceeding in the Surrogate's Court, as the surviving spouse of the decedent Peter Agioritis, to obtain a determination as to validity and effect of her election under said EPTL 5-1.1 (subd [b], par [1], cl [B]) to take a share of his estate. Petitioner now appeals from so much of a decree entered in the office of the Clerk of the Surrogate's Court, New York County (DI FALCO, S.), on October 15, 1975 as denied her such right of election against certain savings bank accounts decedent opened subsequent to August 31, 1966 in his name in trust for designated beneficiaries, from funds he

withdrew from accounts he had in other banks prior to August 31, 1966 in his name in trust for the same designated beneficiaries.

Respondent (representing numerous collateral relatives of decedent) cross-appeals from so much of the decree as granted petitioner such right of election against certain savings bank accounts decedent opened subsequent to August 31, 1966 in his name in trust for designated beneficiaries, from funds he withdrew from accounts he had in other banks prior to August 31, 1966 in his name in trust for different beneficiaries.

Respondent cross-appeals further from so much of said decree as determined that a $15,000 deposit made on February 21, 1973 in a savings bank account in the joint names of decedent and petitioner was not part of decedent's estate and therefore not to be credited against petitioner's distributive share.

It is undisputed that petitoner married decedent in August, 1950 and lived with him continuously in this city until his death in June, 1973. He died intestate and without issue. He left a gross estate of approximately $800,000 of which more than $650,000 consisted of savings bank accounts in the name of decedent in trust for various relatives living in Greece. None of the beneficiaries contributed to the sums on deposit in these accounts, and all passbooks were in decedent's possession when he died. Among decedent's accounts at his death was one he opened in the joint names of himself and petitioner subsequent to August 31, 1966, $15,000 of which she contends was her money and hence not to be included in the calculation of the amount in decedent's estate, and therefore not to be credited against her distributive share.

After petitioner obtained letters of administration, she executed and filed a notice of intention to take her elective share of the estate. She contended below and now argues that as surviving spouse she possesses a right of election under aforementioned EPTL 5-1.1 (subd [b], par [1], cl [B]) against the accounts herein involved as "money deposited" by decedent subsequent to August 31, 1966 in Totten trust savings bank accounts and remaining on deposit at his death.

She submits that money deposited by decedent after August 31, 1966 in those accounts from funds he withdrew from accounts he opened in other banks prior to that date in his name, whether in trust for the same or different beneficiaries,

resulted in the creation of testamentary substitutes against which she may assert a right of election, and that such result was consistent with the intent of the Legislature to enlarge the protection to be afforded a surviving spouse.[1]

Respondent contends, as he did below, that money decedent deposited in Totten trust savings accounts prior to August 31, 1966 is not subject to the surviving wife's right of election simply because decedent transferred the funds from one bank to another bank subsequent to August 31, 1966 or because he changed or added a beneficiary subsequent to that date; that the Legislature "never intended to protect the rights of a surviving spouse at all costs against the right of a decedent to dispose of his property."

In his opinions, which preceded the order from which there are cross appeals, the Surrogate construed the statute as providing the surviving spouse with a right of election only where the change in a Totten trust account was "significant", i.e., where there was a change of beneficiary.

The Surrogate held that:

(1) All Totten trust accounts in which all money was deposited by decedent prior to August 31, 1966 and there was no change of beneficiary subsequent to that date are exempt from the widow's right of election.

(2) All such accounts in which all money was deposited by decedent prior to August 31, 1966 and the funds thereof transferred by him subsequent to that date from one bank to another with no change of beneficiary are exempt from the widow's right of election. The Surrogate decided this was a change merely of form and not a significant change.

(3) All such accounts in which all money was deposited by decedent prior to August 31, 1966 and the beneficiary changed or another beneficiary added after that date are not exempt from the widow's right of election. The Surrogate decided such change was significant and not merely one of form.

On this appeal, as we have stated, we are required to examine the statute to determine whether the funds in decedent's said Totten trust accounts at the time of his death are

1. This appeal does not present any claim by petitioner with respect to Totten trust accounts opened prior to August 31, 1966 in which: (a) both bank and beneficiary were not changed after that date, or (b) although bank and beneficiary were not changed after that date there occurred some change after that date for the purpose of higher interest or from bank account to certificate of deposit.

testamentary substitutes within the meaning of EPTL 5-1.1 (subd [b], par [1], cl [B]) and if they are, the extent to which they may be considered as such. In order to make our determination, it is necessary to examine the history and background of this legislation to ascertain the legislative intent which motivated the adoption of EPTL article 5 (see L 1966, ch 952).

EPTL 5-1.1 (subd [b], par [1], cl [B]) afore-mentioned, so far as applicable, provides that the following are deemed testamentary substitutes: "Money deposited, after August thirty-first, nineteen hundred sixty-six, together with all dividends credited thereon, in a savings account in the name of decedent in trust for another person, with a banking organization, savings and loan association * * * or bank or savings and loan association organized under the laws of the United States, and remaining on deposit at the date of decedent's death."

The 1930 revision of the New York estate laws (a) abolished dower and curtesy; (b) changed the rules of intestate distribution so as to abolish the distinction between real and personal property for the purpose of such distribution; (c) provided with respect to the estates of decedents who died testate, that the surviving spouse could elect to take outright essentially that which would have been the intestate share, unless the will made substantially the same provisions for the surviving spouse (except that the will could leave to the surviving spouse the income for life rather than principal of the applicable portion of the decedent's estate).

Thus, section 18 of the Decedent Estate Law provided for the abolition of dower and curtesy but permitted a surviving spouse to take a share of the estate of the deceased spouse not exceeding one half of the estate against decedent's will, except, the will could leave her a life interest in the income of the elective share. Little or no attention was given to the idea of restricting or limiting *inter vivos* transfers of property (NY Legis Doc, 1928, No. 70, Combined Reports, p 171). It was asserted that the thrust of section 18 was to increase the share of the surviving spouse in the estate by, *inter alia,* an election against the terms of the will, thus enlarging the rights of such surviving spouse (L 1929, ch 229, § 20). In this connection, see *Bodner v Feit* (247 App Div 119); *Newman v Dore* (275 NY 371); *Debold v Kinscher* (268 App Div 786, affd 294 NY 668).

The question arose whether a Totten trust constituted an *inter vivos* transfer (in which event the surviving spouse

would have no interest in the account, unless of course she was beneficiary) or whether, being at all times subject to the decedent's control, such an account constituted a portion of the decedent's estate so that the surviving spouse would have a right to include such an account in the value of the estate for the purpose of exercising her right of election.

However, in 1951 in *Matter of Halpern* (303 NY 33) it was held that a Totten trust account could be used effectively to defeat the expectant distributive share of a surviving spouse. Judge DESMOND, writing for the majority in the Court of Appeals, stated (p 39) that, "Perhaps it may seem that we are putting the legislative policy of section 18 to rout by use of the court made * * * rule of the *Totten* case. But the Legislature has made no effort to interfere with the impact of Totten trusts in this connection, nor has the Legislature * * * done anything to save a wife from disinheritance by means of an effective trust erected in a husband's lifetime, for that purpose. It is the simple fact that section 18 does not affect the disposition of property *inter vivos*". Thus it can be concluded that *Halpern (supra)* had in effect placed judicial imprimatur on the use of Totten trust to defeat a spouse's expectancy.

The holding in *Halpern (supra)* provoked legislative action which eventually brought forth EPTL 5-1.1 (Third Report of Temporary State Comm. on Modernization, Revision and Simplification of Law of Estates, Legis Doc 1964, No. 19 dated March 31, 1964, John D. Bennett, Chairman).

This background of the section and its legislative history make it plain that the purpose of the Legislature, in enacting the statute under consideration, was to implement the surviving spouse's right of election so as to include *inter vivos* transfers which could fairly be deemed to be testamentary substitutes, including the Totten trust (Temporary Commission on Estates, Report No. 1.5C, p 122; NY Legis Doc, 1964, No. 19, dated Jan. 24, 1964).

The following excerpts from the reports of the Bennett Commission clearly set forth the public policy under which EPTL 5-1.1 was predicated, and the remedial purpose sought to be advanced by its enactment:

"In general the recommendation [of the Report] is an extension of present section 18 to cover not only the will but certain other transactions which are in fact, though not in law, equivalent to testamentary disposition." (Temporary Com-

mission on Estates, Report No. 1.10B, p 224; NY Legis Doc, 1964, No. 19, dated Jan. 16, 1964.)

"If any *inter vivos* device appears to be testamentary, it is the Totten trust * * * It is all but unanimously agreed that the surviving spouse cannot be protected until the *Halpern* decision is overcome." (Temporary Commission on Estates, Report No. 1.5C, p 124; NY Legis Doc 1964, No. 19, dated Jan. 24, 1964.)

"The intention of this recommendation is to treat, for the right of election purposes * * * Totten trusts, * * * joint bank accounts * * * as testamentary assets." (Temporary Commission on Estates, Report No. 1.10B, p 226; NY Legis Doc 1964, No. 19, dated Jan. 16, 1964.)

"To remedy this situation, it is recommended that the right of election be extended to give the surviving spouse the right to elect against 'testamentary provisions' even where the decedent has died intestate." (Temporary Commission on Estates, Report 1.10B, p 230, *supra.)*

"This act is recommended by the Temporary Commission on the Law of Estates and it is intended to provide a comprehensive statement as to the rights of a surviving spouse with respect to inter vivos transactions made by the decedent, as well as properly disposed of by will and it applies both in cases of testacy and intestacy." (Fourth Report of Temporary State Commission on the Modernization, Revision and Simplification of Law of Estates; NY Legis Doc, 1965, No. 19, dated May 31, 1965 [Note p 145].)

It thus appears that in adopting the recommended legislation with respect to testamentary substitutes, the Legislature, as a matter of policy, overruled the doctrine of the *Halpern* case, and decided that Totten trusts should be subject to the right of election and to the testamentary substitute doctrine, so far as constitutionally permitted.[2]

Accordingly, we hold that it was the legislative purpose in enacting EPTL 5-1.1 to strengthen and enlarge the rights of a surviving spouse in all instances where moneys were deposited by a decedent in Totten trusts after August 31, 1966.

---

2. The reason the Legislature limited the new legislation to Totten trusts, where there were changes after August 31, 1966, was the fear of constitutional infirmity if the statute was made applicable to pre-existing Totten trusts (Fourth Report of the Temporary State Commission on Modernization, Revision and Simplification of Law of Estates; NY Legis Doc 1965, No. 19, dated April 30, 1965, p 152).

Our view is fortified by the mandate on statutory construction that, "legislative intent is to be sought and ascertained from the words and language used, or from the language used in the act, read in connection with the canons of interpretation and *surrounding circumstances.* Ordinarily the courts are not at liberty to hold that the Legislature had an intention other than its language imports * * * A statute should not be extended by construction beyond its express terms or reasonable implications of its language." (Emphasis added.) (McKinney's Cons Laws of NY, Book 1, Statutes, § 94.)

As has been stated in another connection, "[a] court is obliged to construe statutory language literally where it expresses the evident intent of the Legislature and the court cannot disregard the plain words of a statute even in favor of what may be termed equitable construction, in order to extend it to some supposed policy not included in the act" *(Matter of Grossan,* 71 Misc 2d 1050, 1052).

The whole purpose of the provisions granting the surviving spouse's election against the will, or to treat *inter vivos* transfers as testamentåry substitutes, was to defeat the intention of a decedent who did not make adequate provision for his wife. However, the court below attempted to adopt an equitable course herein on the theory that it was obligated to protect "the object of the depositor's bounty." This decision relied in the main on *Matter of Kleinerman* (66 Misc 2d 563, 565) where Surrogate SOBEL found that the statute could not be read literally because from the "viewpoint" of the purpose of the statute "rather than its literal terms, it would be anomalous to hold that a mere transfer converts the exempt account into a testamentary substitute but that a change or substitution of beneficiaries does not." In further relevant part he wrote (p 569): "In the absence of legislative purpose or intent, the decision of the questions at issue is a matter of policy rather than of law." (See, also, *Estate of Feinzeig,* Sur Ct, Kings County, NYLJ, Feb. 18, 1976, p 12, col 1.) Disagreement has been expressed with the refusal of the Surrogate to read the statute literally: "Another court, with a different view of these matters, might well have decided the case the other way." (Pasley, Trusts and Administration, 23 Syracuse L Rev 239, 264.)

In our view the language of the section under review is precise and unambiguous; it explicitly and without qualification states that "money deposited, after August thirty-first,

nineteen hundred sixty-six together with all dividends credited thereon" in the name of the decedent in trust for another person is a testamentary substitute subject to a surviving wife's right of election.

Therefore, we do not agree with the court below, or with the decision in *Kleinerman (supra),* that transfers by decedent after August 31, 1966 to a Totten trust account in one bank from money deposited prior to August 31, 1966 in a Totten trust account in another bank where the beneficiaries are unchanged are exempt from this section. Where after August 31, 1966, money is placed in a bank in which it has not been before, it falls within the section. The statute makes no reference to the origin of the money deposited; the only prerequisite for the applicability of the statute is that the money be deposited in a Totten trust account subsequent to the critical date.

The fact that the money was withdrawn from pre-August 31, 1966 accounts by teller's check payable to decedent individually or by bank draft from one bank to another or even, indeed, if such transfer were accomplished by any other means, does not change the inherent nature of the new deposit as "money deposited after August thirty-first, nineteen hundred sixty-six". The change is a significant change, as it falls within the language and intent of the statute (EPTL 5-1.1, subd [b], par [1], cl [B]).

We agree, however,with the court below, that money deposited in Totten trust accounts in which the beneficiary was changed or another beneficiary added after August 31, 1966, is not exempt from said section. The change of beneficiary in such accounts vitiates their exempt status.[3] This is more than a mere formal change; it is rather in effect a new testamentary plan completely changing the disposition to be made of the funds at the death of decedent by selecting another person as the object of the depositor's bounty. It is a significant change.

It should be noted that the execution of a will after August 31, 1966 makes a previously exempt transaction subject to the widow's right of election (EPTL 5-1.1, subd [c], par [1], cl [C]; 5-1.1, subd [c], par [2]). A Totten trust has been referred to as a

---

3. In our view this conclusion is applicable to all funds in such accounts, regardless of whether the deposits were made before or after August 31, 1966 or whether such accounts were transferred from one bank to another after that date.

"poor-man's will" (Bogert, Trusts and Trustees [2d ed], 47; New Methods of Creating a "Poor Man's Will" in New York, 53 Col L Rev 132). In changing the beneficiary after the critical date the depositor, in effect, is making a substantive change in the disposition of his property after his death as if he were making a will. This is a significant and not a mere formal change. In keeping with the legislative intent *(supra)* such Totten trusts likewise are deemed testamentary substitutes subject to the surviving wife's right of election.

We concur with the court below that in the instance of withdrawals from Totten trust accounts which consist of deposits made both prior and subsequent to August 31, 1966, such withdrawals should be deemed to have been made from money first deposited.

Although there is no express provision in the statute addressing itself to this problem, we agree with the Surrogate that "the purpose of EPTL 5-1.1 was to benefit the surviving spouse and to remedy a situation wherein she was deprived of her right of election by certain devices in the nature of testamentary substitutes" and that "it would be more in keeping with the intention of the Legislature to apply the 'first in-first out rule' because 'this will serve to wither away the exemption of previously deposited funds, and thereby implement the beneficial ends sought to be achieved by EPTL 5-1.1 (b)'." (See 9A Rohan, NY Civ Prac, par 5-1.1 [5], p 5-51.)

Accordingly, we conclude that the "first in-first out" rule should be deemed applicable to the funds in question. Were a "last in-first out" rule to be applied, as suggested by our dissenting brother, such rule would tend to preserve the exempt status of such funds, contrary to the legislative policy *(supra)* which motivated the adoption of the statute.

We will not disturb the Surrogate's finding that the $15,000 deposit made by decedent on February 21, 1973 in the savings bank account in joint names of decedent and petitioner was not to be deemed a part of decedent's estate. There is sufficient evidence in the record to support said finding.

It should be observed that in enlarging the surviving spouse's right of election, the Legislature sought to avoid inequity. The legislation, under review, does not provide that beneficiaries of such Totten trusts are not to receive the "depositor's bounty," but rather that such beneficiaries are to make ratable contribution to the share to which the surviving spouse is entitled (EPTL 5-1.1, subd [d], par [2], cl [B]). The

beneficiaries, therefore, still will receive a portion of the decedent's beneficence.

The decree of the Surrogate should be modified on the law in accordance with the determinations hereinabove set forth, with costs to all parties filing briefs payable out of the estate, and the matter remanded to the court below for appropriate proceedings as required.

LYNCH, J. (dissenting). In his supplemental opinion of October 15, 1975, the Surrogate ruled that withdrawals of moneys from Totten trust accounts which consisted of deposits made both prior and subsequent to August 31, 1966 should be deemed to have been made from the pre-August 31, 1966 deposits. In short, a first in-first out rule. This is inconsistent with the interpretation of EPTL 5-1.1 that he adopted (with which I concur) in his primary opinion of June 13, 1975 (84 Misc 2d 83, 87), i.e., "that the Legislature intended that transfers completely effectuated prior to August 31, 1966 remain untouched by the statute as it presently reads". I would adopt a last in-first out rule to accomplish this intention. Otherwise, I would affirm for the reasons stated in the primary opinion.

STEVENS, P. J., SILVERMAN and CAPOZZOLI, JJ., concur with BIRNS, J.; LYNCH, J., dissents in an opinion.

Decree, Surrogate's Court, New York County, entered on October 15, 1975, modified, on the law, in accordance with the determinations set forth in the opinion of this court, with $60 costs and disbursements to all parties appearing separately and filing separate briefs, and the matter remanded to the Surrogate's Court for appropriate proceedings as required.