Nathan R. Sobel, S.
This is a proceeding pursuant to SCPA 1421 to determine the validity and effect of a widow’s right of election.
Decedent Anthony Spinelli died intestate on April 9, 1973, survived as his sole distributee by his wife of 30 years, Josephine Spinelli. There were no estate assets.
Letters of administration were issued to the wife Josephine (August 8, 1973) to permit her to file a notice of election against testamentary substitutes. She has done so and at the same time obtained from the court a restraining order against the bank involved.
The widow seeks to have her right of election determined against two testamentary substitutes. Both are Totten trust accounts for the benefit of decedent’s niece Mary Rocamboli. The niece has been served with process, in this instance an order to show cause, and has defaulted. The pleadings include transcripts of both Totten trust accounts.
(1.) Mr. Spinelli, the decedent, opened an individual account with South Brooklyn Savings Bank (No. 560323-8) on June 30, 1966 with a deposit of $10,000. He converted it into a Totten trust account in trust for Mary Rocamboli on June 30, 1970. The transcript indicates that all interest earned in the interval (June 30, 1966 to June 30, 1970) was withdrawn as earned. On June 30, 1970, when the "testamentary substitute” was created, there was on deposit $10,000. The transcript further establishes that Mr. Spinelli thereafter until the date of his death (April 9, 1973) continued to withdraw but only in part interest earned. The date of death deposit was $11,000. On April 30, 1973, Mary Rocamboli as the beneficial owner of the deposit withdrew $2,390.90 to pay Mr. Spinelli’s funeral bill. On May 14, 1973, she withdrew the balance of $8,609.10 and deposited that sum in an account in the Hamilton Federal *1041 Savings and Loan Association (No. 61098) in her individual name.
(2.) Decedent Anthony Spinelli had created a Totten trust account i.t.f. Mary Rocamboli in the Hamilton Savings and Loan Association (No. 44367) prior to September 1, 1966. On that date there was on deposit $1,433.04. This was to that extent an "exempt” account and not a "testamentary substitute.” The account continued thereafter as an active account. Between September 1, 1966 and date of death (April 9, 1973) there were deposits of $4,914.16, interest earned of $1,086.04 and withdrawals of $1,933.24. On date of death (April 9, 1973) there was a balance of $5,500 on deposit. The respondent beneficiary following the death of Mr. Spinelli withdrew (April 23, 1973) the balance of $5,500 and deposited that sum in an account or accounts in the same bank in her individual name (Nos. 60863, 61098). These accounts were subsequently closed and three new accounts (no numbers furnished) opened at Hamilton Federal. Hamilton Federal has been restrained from paying such accounts pending determination of this proceeding.
In the above regard, attention is directed to the recent decision of the First Department in Matter of Agioritis (52 AD2d 128). Among other important issues, that court directed that with respect to an "exempt” account in which there are made, on or post-September 1, 1966, both deposits and withdrawals, the principle of "first-in-first-out” (FIFO) should be applied. Thus, in every case, total withdrawals on or after September 1, 1966 will serve to reduce the "exempt” part (preSeptember 1, 1966 deposits). In practical experience, as in the instant case, withdrawals will often exceed the exempt part thus making the total date of death deposit a "testamentary substitute.”
The decision in Agioritis overrules this court’s decision in Matter of Ardolino (78 Misc 2d 996) which suggested an apportionment of withdrawals between the pre- and post-September 1, 1966 deposits and also a separate apportionment of dividends (interest) earned on both pre- and post-September 1, 1966 deposits which the statute (EPTL 5-1.1, subd [b], par [1], cl [B]) seemed impliedly to require. Agioritis would treat dividends earned on both pre- and post-September 1, 1966 deposits as "moneys deposited” post-September 1, 1966. This court’s decision in Ardolino was based on the not unrelated principles in the Restatment of Restitution (§§ 211, 213)— *1042 "Where a person wrongfully mingles money of two or more persons and subsequently wrongfully withdraws and dissipates a part of the money, the claimants are entitled to share the balance proportionately.” (See, also, 5 Scott on Trusts [3d ed], p 3641; but cf. Matter of Schmidt & Co., 298 F 314; Ruddle v Moore, 411 F2d 718, both based on the rule in Clayton’s Case, 1 Merivale 572).
However, Agioritis is a very welcome decision since the FIFO principle relieves the Surrogates of troublesome mathematical computations. It is of course adopted by this court. There are problems with the FIFO formula, one of which is mentioned since frequently encountered. Many depositors use their Totten trust deposits to obtain bank drafts. They make same date deposits and withdrawals by bank check in order to facilitate personal or business transactions requiring the equivalent of cash. Such use will now probably increase in view of new authorizations for savings banks. Under Agioritis the same date deposit will be treated as a testamentary substitute but the same date withdrawal under FIFO will be charged against the exempt part of the account. Nevertheless, Agioritis is premised on a legislative (and Bennett Commission) intent to implement to the fullest extent the surviving spouse’s right of election.
Parenthetically, it is observed with respect to other aspects of the Agioritis decision that it expressly overrules this court’s decision in Matter of Kleinerman (66 Misc 2d 563). In that case this court observed a legislative intent, and not for constitutional reasons, to preserve as "exempt” Totten or joint accounts transferred post-September 1, 1966 from one bank to another without change of beneficiary. Agioritis holds that such a transfer causes the account to lose its character as "exempt” and to become a "testamentary substitute.” Agioritis in this aspect will necessarily be followed. Attorneys should hereafter advise their clients that any transfer from one bank to another or any change in the beneficiary of a previously “exempt” Totten or joint account will convert the deposit into a "testamentary substitute.” * * *
We turn to the computation of the widow’s elective share of the testamentary substitutes. For the purpose of computation only, the testamentary substitutes as of the date of decedent’s death (EPTL 5-1.1, subd [b], par [1]) are treated as if the capital value were part of the decedent’s estate. There being *1043 no issue of the decedent, the widow’s elective share is one half. (EPTL 5-1.1, subd [c], par [1], cl [B].)
The South Brooklyn Savings Bank account was created a testamentary substitute on June 30, 1970. Since it was an individual account and not a Totten trust account prior to that date, it was never an "exempt” account. The FIFO principle of Agioritis is only applied when the account in issue was a previous "exempt” joint or Totten account in which both post-September 1, 1966 deposits and withdrawals were made. It is not applicable to a bank deposit which was an individual account of the creator prior to conversion to a "testamentary substitute.” We therefore consider only the date of death deposit in the South Brooklyn Totten trust account which the court has determined was $11,000.
With regard to the Hamilton Federal account, that was an "exempt” Totten trust account prior to September 1, 1966 to the extent of $1,433.04. The post-September 1, 1966 withdrawals were $1,933.24. Under FIFO principles all of the exempt funds were withdrawn. It is only necessary therefore to consider the date of death deposit ($5,500) as a "testamentary substitute” against which the widow may elect.
We add the total of testamentary substitutes ($11,000 + $5,500 = $16,500) to the total net intestate estate (in this case there is none). We deduct, however, from the total of testamentary substitutes the funeral expenses paid out of the Totten trust, viz., $2,390.90. When there are no estate assets, the Totten trust is liable for debts and funeral expenses of the decedent. The total of "testamentary provisions” is $14,109.10. The widow’s elective share is one half of $14,109.10 or $7,054.55.
The request for interest is disallowed. The statute makes no provision for the addition of interest to the widow’s elective share for the reason that such share is treated as a general disposition by will or a distributive share in intestacy. Only a "personal representative” can be required to pay interest to a legatee or distributee and then only pursuant to the provisions of EPTL 11-1.5 (subd [d]).
The decree to be entered on default of respondent Mary Rocamboli shall direct the respondent Hamilton Federal Savings and Loan Association to pay from any account or accounts in the individual name of Mary Rocamboli the sum of $7,054.55 to Josephine Spinelli as administratrix and shall *1044 provide that upon such payment the restraining order dated September 7, 1973 shall be vacated.